Vicknair, Wife of Lasseigne, vs. Trosclair.

## No. 11,168.

VICTORIA VICKNAIR, WIFE OF FELIX LASSEIGNE, VS. LEUFROID I. TROSCLAIR.

A notarial act executed by the wife, in which she sells her paraphernal property, is null and void as against her, if the same was executed under the coercive influence of the husband.

The wife is a competent witness as to the threats which induced her to sign said act. She is not confined in her attacks on said act to counter letters, interrogatories on facts and articles, but may resort to competent parol testimony to show the real character of the transaction.

Vicknair, Wife of Lasseigne, vs. Trosclair.

The fact that no threats were heard by the notary, and that the wife was cool and self-possessed when she signed the act, and the testimony of relatives and neighbors that she made no complaint to them is negative in its character, and does not absolutely contradict the wife's positive testimony as to the threats made by the husband.

The threats once made are presumed to influence the wife and cause her silence until an opportunity is presented for the assertion of her right on the property alienated.

The silence of the wife does not estop her. She is not bound by the doctrine of estoppel as usually understood.

In the sale of the wife's property under alleged threats, the fact that she received no benefit from the sale will corroborate to a certain extent her evidence as to the threats.

The wife may introduce parol testimony to show that the person who eventually acquired her property was in fact the original party for whose benefit the sale was made and is not an innocent third party who acted upon the apparent validity of the transaction.

Where a party is interposed and a simulated sale is made to him by the wife of her property, and it is then immediately sold to the husband, it is a sale direct from wife to husband, and therefore null and void.

A party who has a judgment in his favor can not obtain a new trial for the purpose of introducing corroborative evidence.

A PPEAL from the Eighteenth District Court, Parish of Lafourche. Caillouet, J.

*A. F. Knobloch* and *L. F. Suthon* for Plaintiff and Appellant:

1. A married woman revendicating her paraphernal property wrongfully sold can resort to every species of evidence; the doctrine of estoppel does not apply to her. 33 An. 1099; 34 An. 632.

2. In contracts injurious to the wife's property interests, the marital influence is presumed. 2 An. 756; 12 An. 852; 14 An. 169.

3. This presumption, when supported by the wife's own evidence, is conclusive where there is nothing to rebut it. 23 An. 240.

4. An absolute nullity can not be the basis of title, and when patent on the public records, can not avail to give a possessor the character of a possessor in good faith. 24 An. 253; 41 An. 494.

*Clay Knobloch* for Defendant and Appellee.

The opinion of the court was delivered by

McENERY, J. The plaintiff and her husband, separated in property, owned a plantation in indivision, the wife's interest being one-eighth, which she inherited from her father. The husband owned a small plantation, on which he resided. The plantation owned by husband and wife was called "Vicknair." The "Lasseigne" planta-

tion, on which plaintiff and husband resided, was just below a plantation owned by defendant, known as the "Trosclair" tract. Contiguous to the "Vicknair" plantation, the defendant also owned a small tract of land.

In the early part of 1889, Lasseigne, plaintiff's husband, called on defendant and proposed an exchange of the "Vicknair" tract for the "Trosclair" tract, so as to place those respective lands in one body. Defendant after some delay finally consented to make the exchange. On the 9th March, the plaintiff sold her one-eighth interest in the Vicknair plantation, to Anatole Naquin, and on the same day, before the same notary and in the presence of the same witnesses, Naquin sold this eighth interest to plaintiff's husband.

It is fully proved that the sale to Naquin was a pure simulation, made for the purpose of selling and transferring by the wife her eighth interest to her husband, so that he could make the exchange agreed upon between him and defendant.

Both plaintiff's husband and the defendant owed mortgage debts on their respective properties. We infer from the records. that plaintiff's one-eighth interest was unaffected by any incumbrance. On 27th March, 1891, the exchange was perfected by plaintiff's husband selling the "Vicknair" tract to defendant, and the latter selling to the former the "Trosclair" tract.

The mortgages on the two properties were transferred, the "Trosclair" tract becoming burdened with the mortgage debt of plaintiff's husband.

In. the sale or the exchange of the two properties there was no money consideration paid. Each plantation was the equivalent of the other.

In April, 1891, when proceedings were instituted to forclose the mortgage on the "Trosclair" tract, this suit was brought, the plaintiff alleging that the sale from her to Naquin was an absolute nullity, the sale being simulated and made for the purpose of selling her eighth interest to her husband; that the sale was in fact a direct conveyance by her to her husband. She further avers that she was induced to make said sale to Naquin by coercion of her husband. She prays to be declared the owner of the property described in the petition, and for rent at the rate of $200 per annum, with legal interest from judicial demand.

The defendant sets up title from plaintiff's husband by public act,

passed 27th of March, 1889, and from Naquin to said husband. He alleges that his vendor was in open and notorious possession of said property by titles translative of property, and especially of the undivided eighth claimed by plaintiff in the "Vicknair" tract by reason of the act of sale from Naquin to Lasseigne. He further avers that by the recordation of said several acts of sale he is protected against any alleged simulated sale, if any existed, between plaintiff and her vendee, Naquin, as no counter letter exists or has been recorded; that he has had no notice or knowledge of the facts alleged in plaintiff's petition, and that in the absence of a counter letter no evidence of any nature whatever could be introduced against her. There was judgment for the defendant and plaintiff appealed.

There were several bills of exception reserved during the time of the trial.

The plaintiff was sworn as a witness in her behalf. Defendant objected on the grounds (1), that she could not give evidence for or against her husband; (2), that it was an attempt to destroy title to real estate by parol; to establish title in some other person than the one named in the notarial act; to prove by parol agreements relative to real estate antecedent and subsequent to the execution of the authentic act of sale; that it was an attempt to prove by parol matter beyond what is contained in the authentic act; (3), that the defendant being a third person and not being charged with notice or knowledge of the facts set up in plaintiff's petition, no evidence of any nature whatever could be introduced against him; (4), that conversations between the husband and wife out of the presence of the defendant, who was not a party to the sale or transaction to which they relate, are inadmissible in evidence.

(1) No evidence was sought by her testimony that could in any way affect the interest of the husband. He was not a party to the suit. His wife was a witness in her own behalf, with no interest of the husband at issue which her testimony could affect favorably or adversely.

(2) The wife sued for property which she says was wrongfully sold by her husband. There is no attempt made to contradict the fact of the execution of the authentic acts. Their nullity is urged. It is well settled that in suits of this character the doctrine of estoppel, as usually understood, does not apply to the wife; that she can resort to parol testimony to show the real character of the transac-

tion, and that in attacking authentic acts she is not confined to counter letters and interrogatories on facts and articles. Harrang vs. Blanc, 34 An. 632; Moore & Coleman vs. Rash, 30 An. 1157; Chaffe Bro. & Son vs. Oliver, Admr., 33 An. 1010. The effect of the attack on the authentic act by the wife is that it destroys the title held adversely to her and restores her to her just rights; reinstating title in her is the object sought by the exception in her favor. It springs from the necessity of the case, the wife being under the presumed control and dominion of her husband.

To deny the exception in her favor would be to deny her the benefit of the provisions of the law enacted to protect her interest in preventing imposition upon her.

(3) The defendant being apparently a third party, it is competent to show his real connection with the transaction. This follows from the principle that parol evidence may be resorted to by her to disclose the whole transaction in order to discover its real character.

(4) In her direct testimony the wife testified to the fact of the intimidation. The conversation and circumstances attending it were brought out by defendant on cross-examination. But in a case like the instant one, where the nullity of the contract is demanded because produced by threats and violence, the party in whose favor the contract is made will be affected, although he was ignorant of the threats or violence used to procure the contract. C. C., Art. 1582. The testimony may show that the defendant, although ostensibly a third party, was in fact the beneficiary of the contract.

(5) The conversations of husband and wife in relation to the transaction are the facts to be shown to establish the threat or violence, the undue exercise of marital influence. Usually the wife is the only person by whom they can be proved, as they are not likely to be made in public in the presence of other parties. Their publicity would in all probability destroy their desired effect.

The views above expressed will apply to the second bill reserved to the judge's ruling to the admissibility of the testimony of the notary who passed the acts.

The defendant moved for a new trial on the ground of the discovery of new, important and relevant evidence that would estop and bar plaintiff's suit. The new trial was denied, and we think properly. The defendant had a judgment in his favor and it would have been contrary to all rules and precedents to reopen the case

after judgment in order that he might introduce corroborative evidence. It is to be presumed that the judgment was amply supported by the evidence.

Some time elapsed before the wife complained of the sale of her interest in the Vicknair plantation. This is urged as one of the defences to her recovery. If the threat was a fact it is to be presumed that the effect on the wife will continue so long as the husband and wife live together. The wife would naturally be in constant fear of its repetition and execution if she complained. She was therefore powerless to act until an opportunity presented itself. This was, in this case, when the property was to be sold under the mortgage placed upon it by her husband, when she saw that she would be left without anything, and it may be in such a case the husband became more amiable. But her silence can not prejudice her. McIntosh vs. Smith, 2 An. 756.

The property of the wife was sold through an interposed party to the husband. He thus apparently became owner of the whole tract. He almost immediately exchanged it for other property, on which he placed a mortgage, thus sacrificing his wife's interest.

She in no way received any benefit from the transaction; the husband was the sole beneficiary.

If a person should, without price or any consideration, dispose of all his property to another, some undue influence upon him would at once be suspected, if not presumed. And where a wife disposes of her property, evidently through her husband's influence in this case, and she receives no benefit from it whatever, why should not some undue marital influence be suspected, and corroborate at least her testimony as to the threats used to coerce her into its disposition or sale ?

The plaintiff says: "The fact is that my husband came down and had the acts prepared, and came back and told me that I must sign; that is to say, he told me if I did not sign he would leave me. Then I came down to the office, I think it was Mr. Nick Coulon's, and signed."

On cross-examination, she is asked to give the whole conversation with her husband. She answered: "He commenced the conversation. He told me in the morning, ' I have had an act of sale prepared. I want you to go down and sign it,' and I asked him what for and for what property, and he told me. I said I did not want to

sign, for I had inherited it from my father. He said, 'I want you to sign, and you must sign.' I told him I did not want to sign. He then made the threat that if I did not sign he would quit me. Naturally, I told him that I would sign on account of my children. I did not want to be left alone with them." Such a threat would likely influence any wife.

As stated by Chief Justice Manning, in Moore & Coleman vs. Rush, 30 An. 1150, "Maternal tenderness was victorious over the instinct of property preservation."

There is nothing in the record that indicates that her statement is not true. The notary says that she was calm and self-possessed, in no way nervous, when he explained the object and purpose of the transaction, and when she signed the act.

There are witnesses, relatives and neighbors who say she never complained of the sale of her property or referred to the threat of her husband. This is negative testimony. There is no reason why she should have gone to the neighbors and laid bare a wrong inflicted by her husband, and there is less reason why, in the presence of the notary and the witnesses, she would have enacted a scene that would have brought her into unenviable notoriety.

In commenting upon the authorities cited to show that parol testimony may be offered and received in evidence, to establish the true nature and purpose of a transaction which affects the wife's interest, this court said in Chaffe vs. Oliver, already cited:

"Of course these doctrines have their limitations when they involve the rights of innocent third parties, persons who have acted in good faith upon the apparent validity of such transactions."

The facts disclosed by the record will not justify us in treating the defendant as an innocent third party, who acted in good faith upon the apparent validity of the transaction in which he participated.

The evidence is that the plaintiff's husband, before the simuiated sale to Naquin, had agreed upon the exchange of the "Vicknair" plantation for the "Trosclair" tract. There is no room for doubting that he knew that the sale made to Naquin was a simulated one, and that it was made for the purpose of placing title to the entire property in the name of the husband, in order to be transferred to him.

The deed from plaintiff's husband to him recites: "Being the

property acquired by vendor of the heirs and legal representatives of the late Valley Vicknair and *his wife*, Adele Vicknair, in the proportion of one-eighth from each of said heirs." This recital ignores the sale from plaintiff to Naquin, and is a positive declaration that he obtained title to his wife's one-eighth interest directly from her.

The theory of the district judge was that the preliminary sales were only made for the purpose of putting the property in shape for exchange, a contract which the wife could make with the authorization of the husband. But there was no exchange made by the wife. If she and her husband had exchanged the "Vicknair" plantation for the "Trosclair" place, the wife would have retained her one-eighth interest in that property, for she would have been getting one-eighth interest in the former for an eighth interest in the latter. But the mode of transferring the properties was of a character to divest the wife's interest in the "Vicknair" place, before the exchange, and when it was made she received nothing. In fact, the wife made no exchange of her interest, and we can not so view the transaction as to make the wife a party to a contract in which she never entered or participated.

She was a stranger to the exchange made between her husband and the defendant, and we will only look at the contract which she made.

It was null and void for two reasons:

1. The coercive influence of the husband in forcing the sale from her to Naquin.

2. As he was an interposed party, in order that the husband might purchase the wife's interest, it was in fact a sale from the wife to the husband, not embraced within the exceptions of C. C., Art. 2446, and was in contravention of C. C., Art. 1790.

The improvements made on the "Vicknair" place by the defendant consist only in the change from a rice to a cane crop. They are not permanent.

The value of the rent of the eighth interest in the "Vicknair" plantation is worth fifty dollars per annum. The mortgage creditors, not being parties to this suit, the decree rendered herein will not affect them. The right is reserved to them to assert whatever claim they may have on the mortgaged property.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now or-

dered and decreed that there be judgment in favor of plaintiff against defendant, decreeing her to be the owner of the property described in the petition, and that she be placed in full possession of the same, and that she do have and recover judgment against said defendant, for the rent of said property at the rate of fifty dollars per annum, with legal interest thereon from judicial demand, and all costs.