No. 13,215.

MRS. M. E. DOUGLASS vs. GEORGE DOUGLASS, ET ALS.

SYLLABUS.

The proof disclosing that a married woman conveyed real estate to her husband through the interposition of a third person and without having received any consideration therefor, the transaction is a fraudulent simulation and violative of a prohibitory provision of the Civil Code.

51 1455
L107 495
107 496

51 1455
112 276

51 1455
h118 647

51 1455
e125 281

Douglass vs. Douglass et als.

In such a case, a deed from the wife to a third person and from such third person to the husband, executed on the same day, before the same witnesses, in the same handwriting, and put on record on the same day, must be viewed as one transaction, the object of which was to divest the title of the wife and vest it in her husband.

The husband having died possessed of such a title, his heirs have not an interest therein which is subject to a judicial mortgage; and a creditor holding such mortgage can not enforce same against the property to the prejudice of the wife's claim—no visible change of possession or dominion having taken place in the meanwhile.

ON APPEAL from the Twenty-Third Judicial District Court for the Parish of Tensas. *Tullis, J.*

*Snyder & Clinton* for the Plaintiff and Appellee.

*A. E. Green* for George Douglass et als., Defendants and Appellants.

*Young & Young*, and *Elam & Dale* for Chambers, Roy & Co., in Liquidation, also Defendants and Appellants.

Argued and submitted June 2, 1899.
Opinion handed down June 19, 1899.
Rehearing refused June 30, 1899.

The opinion of the court was delivered by

WATKINS, J. The case presented for our consideration as set forth in the petition, is one of fraudulent simulation, and the charge is that the property was conveyed from plaintiff to her husband through the interposition of a third person, without any price having been paid therefor.

That said transaction was attended with no change of possession, administration or control; and that same is in open and flagrant violation of a prohibitory provision of the law.

The demand of the plaintiff is resisted by the principal defendant, Chambers, Roy & Co., in liquidation, on the ground, that James S. Douglass, acquired the property from J. B. Guthrie, on the 8th of January, 1881, as appears from an act of sale of that date, duly recorded; that some years afterward he died possessed of said property, and it was inherited by his heirs, one of whom is George Douglass; and that subsequently said defendant obtained a personal judgment

against the aforesaid heir and caused same to be recorded, so as to operate as a judicial mortgage, upon all his real property.

The claim urged by said defendant is, that the effect of the aforesaid registry is to bind the undivided share or interest of the said heir in said property, irrespective of the simulation charged by the plantiff, because it is a third and innocent party not charged with notice of, and not bound by any secret equities, or latent ambiguities in the transactions between the plaintiff and her husband.

On these issues a trial was had, and a judgment rendered in favor of the plaintiff and against the defendant, and the latter has appealed therefrom.

The judgment, in terms, decreed the sales from the plaintiff to Guthrie and from Guthrie to James S. Douglass, the husband of plaintiff, to have been simulated and absolutely null and void, *ab initio*; and recognized the plaintiff as owner and in possession of the property.

A brief statement of plaintiff's case is as follows, viz:

That she was the wife and now the widow of James S. Douglass, he having died on the 16th of April, 1890, leaving several children as issue of their marriage—there being seven majors, one of whom is George, and three minors.

She represents, that by a proper judicial decree, bearing date November 17th, 1866, she was adjudged separate in property from her husband, and that the community of acquets and gains theretofore existing between them be dissolved—she being, also, decreed the separate administration of her paraphernal property.

That on the 13th of April, 1868, she purchased from James M. Gillespie, by notarial act, duly recorded, as her separate and paraphernal property, a tract of land situated in the parish of Tensas, known and designated therein as Lake plantation, and containing nine hundred and fifty-five (955) acres, together with all buildings and improvements thereon.

That she entered into possession thereof, and has ever since continued in possession of the whole of said plantation and property.

She represents, that, being desirous of disposing of said property, she caused an investigation to be made of her title thereto, within the last twelve months, and that it disclosed "an apparent cloud upon her title," which is fully recited as follows, viz:

That on the 7th of January, 1881, a petition was presented by

92

Messrs. Halsey and Newell to the district judge, in which they represented themselves as her attorneys, praying that she be authorized to sell a *portion* of the Lake plantation, containing about five hundred and thirty (530) acres; and that said judge granted said order accordingly and endorsed same upon the petition.

That on the day following, the 8th of January, 1881, said attorneys prepared a deed from the petitioner to John B. Guthrie, of Tensas parish, for all of said last described land, for the price of eight hundred dollars ($800.00), in cash; and on the same day, same attorneys prepared a deed to the same land from John B. Guthrie to James S. Douglass, petitioner's husband, and for a like consideration of eight hundred dollars in cash.

That said deeds are in the same handwriting, attested by the same witnesses, and were simultaneously executed—one immediately after the other.

That the two deeds were filed for record on the same date, January 10th, 1881.

She then alleges that she was never divested of title to said property thereby, nor of the possession or control of same; but that, on the contrary, "she has remained in the possession, control and management of the same to the present day."

That she neither employed nor authorized said attorneys to apply to the judge for the alleged authorization to sell said property; and that she had neither knowledge or notice of their employment for her.

"That while petitioner signed the pretended deed to said John B. " Guthrie, she did so in error of its contents, by the exercise of " marital influence, and under the belief and impression that it apper-"tained to some ordinary transaction incidental to her plantation af-"fairs." .

She avers, "that she did not receive the said sum of eight hundred "dollars ($800.00) from the said J. B. Guthrie as the price of the said "property, nor any consideration whatever;" and she further avers "that said James S. Douglass did not pay the said Guthrie the said "eight hundred dollars, nor any other sum whatever, for the said "property."

She represents, that the real value of said property at the time of said pretended sale, and at this time is, fully eight thousand dollars.

Hence, she represents that the said two pretended sales—the one from petitioner to J. B. Guthrie, and that from J. B. Guthrie to J. S.

Douglass, "are and were absolute nullities, being simulated, and made "for the purpose of transferring the title of her said property to her "husband, through J. B. Guthrie, as a person interposed."

"That the transaction was, in fact, a sale from the wife to the "husband not embraced within the exceptions in C. C., Art. 2446, re-"pugnant and contrary to law, and in contravention of C. C., Art. "1790."

She represents that she is desirous of and expects to sell her entire plantation, and that in order to do so, she is obliged to have the afore-said cloud removed from her title.

She represents that Chambers, Roy & Co., in liquidation, is a neces-sary party to this suit, because of it having caused said judgment against George Douglass for $990.30, to be recorded as a judicial mort-gage, upon the theory that he had an undivided interest or share in the aforesaid plantation, as an heir of his deceased father, James S. Douglass; and further, because said company has instituted and is now proceeding against petitioner as third possessor by an hypothecary action for the enforcement of said alleged judicial mortgage on said supposed interest.

The heirs of James S. Douglass, minors, as well as majors, were made parties defendant, as well as Chambers, Roy & Co., in liquida-tion, and judgment having gone against them, all have united in one appeal.

The answer of the heirs is a general denial; that of Chambers, Roy & Co., in liquidation, is, that James S. Douglass acquired the aforesaid property by the aforesaid deed, and at his death a fee simple title vested in his heirs, George Douglass, amongst the number; and that by the registry of its judgment it acquired a judicial mortgage there-on. The company urges the deed since made by the major heirs as an estoppel.

It then pleads the prescription of five years against any demand of the plaintiff to annul said title; and alleges the invalidity of the judg-ment of separation between the plaintiff and her said husband, and denies that plaintiff acquired said property on her own account as paraphernal property.

In this court the defendant pleads the additional prescription of one year against any demand to annul the judgment of the court authoriz-ing Mrs. Douglass to sell the property in contest herein.

Necessarily, the pleas of prescription must be first disposed of.

## I.

The plea of prescription of one year can not prevail, as it is not applicable to the case before the court.

The *ex parte* order of the judge, granting a simple authorization to a married woman to sell her separate property in default of an authorization by the husband, is in no sense a judgment, and there is in the petition no allegation, and in her prayer no demand for its annulment.

All that is alleged on that score is, that the attorneys by whom the petition was prepared and presented to the judge, were not employed or authorized to represent her.

This plea is untenable.

## II.

The defendants' plea of five years' prescription is directed against plaintiff's action as one to annul a sale—James S. Douglass, husband of plaintiff, having died in April, 1891, and her suit having been instituted in the year 1899.

The provision of the law upon which defendants rely is, that an action "for the nullity or recission of contracts," is prescribed by five years. R. C. C., 3542.

On the other hand, plaintiff's counsel deny its applicability, because this is essentially a suit to have a simulated sale decreed such, and, therefore, void *ab initio,* and not in any sense an action to annul a contract.

That this is not a revocatory action, but one *en declaration de simulation.*

Plaintiff's counsel cite the case of Brownson vs. Weeks, 47 Ann., 1042, as supporting defendant's plea of prescription.

It appears from the opinion in that case, that the plaintiff's attack on defendant's title was based upon the claim that the note and mortgage which she executed in favor of Mrs. Stouff were null and void, because the debt was not hers, but that of her husband, for whom she had become security, in violation of Revised Civil Code 2398, but she record disclosed that the defendant, Weeks, was a purchaser in good faith from the plaintiff, at public sale, and he plead the prescription of five years.

In examining and deciding that question the court held, that the

sale and mortgage were not absolute nullities, citing the case of La-fitte vs. Delogny, 33 Ann,. 665, and then said:

"If the contract has been executed, silence by the wife *after the husband's death* during the prescriptive period, would be an implied ratification."

It maintained the plea of prescription under Civil Code, 2221, and Mulford vs. Wimbush, 2 Ann., 443. In the principal case, the plaintiff executed a note, and secured same by mortgage upon her separate property, and the object of her suit was to have it declared null, on the ground that it was to secure a debt of her husband.

This mortgage note was executed in favor of Mrs. Stouff, and she transferred it to Mrs. Brownson, who foreclosed the mortgage and purchased the property, and conveyed same to the defendant, Weeks.

The court below sustained the plea of five years' prescription, and our opinion affirmed its judgment, on the ground that such contract was not an absolute nullity.

. It is sufficient to say that the case of Rouyer vs. Carroll, 47 Ann., 763, cited by counsel for defendant, does not apply to the prescription urged herein, as it related to the "informalities connected with, or growing out of any public sale," which are prescribed against by five years under Revised Civil Code, 3543.

. In our opinion those authorities do not support the defendants' plea, and it is, therefore, overruled.

## III.

### ON THE MERITS.

The theory of plaintiff's suit is two-fold, (1), that the alleged sale from petitioner to Douglass, and from Douglass to her husband, on the same day, and in the presence of the same witnesses, was, essentially, a sale from petitioner to her husband, and in violation of the prohibitory terms of the Revised Civil Code 2446, which prohibits husband and wife from contracting any sale between them, except in certain specified cases; (2), that the two pretended sales aforesaid having been made without any consideration, same are simulations and void *per se.*

In support of the former proposition, she makes reference to the fact that the pretended sale to her husband did not purport to be (1) in payment of his rights; (2) that it did not purport to be a sale by the husband to his wife at all; (3) and that it does not purport to be a

Douglass vs. Douglass et als.

transfer from the wife to the husband in payment of a sum promised as dowry: and in support of the second proposition, she cites the provisions of the code to the effect that "in all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith and establish the reality of the sale." R. C. C., 2430.

At the incipiency of the trial plaintiff offered parol testimony for the purpose of substantiating her averments, and to that offering the defendants' counsel made the following objections:

(1) That defendants can not be affected by any evidence as to the deed of plaintiff to J. B. Guthrie, same being duly recorded, the defendants not having knowledge of the alleged nullities, and being third persons to the deed, and that the plaintiff is, therefore, estopped from disputing the correctness of the same; (2) no parol evidence can be admitted to prove simulation, nor can same affect defendant, who are innocent third persons; (3) that parol evidence can not be admitted to show that J. B. Guthrie was an interposed person between the plaintiff and her husband; (4) and no parol evidence can be received to change, vary, alter or contradict the recitals of the aforesaid deeds; (5) that no parol evidence can be introduced to prove ownership to real estate.

The aforesaid objections were overruled, and the defendants' counsel reserved a bill of exception.

It was agreed between counsel that the aforesaid objections and exceptions should apply to all parol testimony in the record.

Counsel for the defendant cites in support of his exception, the case of Gaudet vs. Dumoulin, 49 Ann., 984. In that case, the object of the suit was to compel the plaintiff to comply with the terms of a sale at auction, upon the ground that he, and not Theodore Gaudet, was the real adjudicatee of the property—the property having been adjudicated, as a fact, to Theodore Gaudet. The claim was made that Theodore Gaudet simply lent the use of his name to his brother, Dr. C. A. Gaudet, and that the latter was the undisclosed actual purchaser; and that fact was attempted to be shown by parol evidence.

Evidence of that character was permitted to be received by the lower court over the defendant's objection, and that ruling was the subject of controversy in this court.

This court said, in passing on the question: "It is not claimed or pretended here that there were any fiduciary relations between Theodore Gaudet and Mrs. Louise Dumoulin, which would entitle the latter to take and hold the property herself, as the real adjudicatee. She does not claim ownership of the property under the adjudication.

"We think the rights of parties in this case are controlled by Hackenburg vs. Gartakamp, 30 Ann., 898; Perrault vs. Perrault, 32 Ann., 636; Heirs of Dohan vs. Dohan, 42nd Ann., 449; Sagory vs. Bouny, 42nd Ann., 618, and Whelage vs. Lotz, 44 Ann., 661."

On those authorities we held that parol proof was inadmissible, and reversed the judgment appealed from.

The theory of the cited cases is, that the contract of mandate for the purchase of real estate can not be proved by parol evidence, even when fraud in the alleged agent is set up.

All of those cases dealt with real contracts, and not with simulated contracts, as the one in controversy is alleged to have been.

In Heirs of Dohan vs. Dohan, 42nd Ann., 449, it was held, that parol proof is not admissible for the purpose of proving that a third person was interposed to receive title to real estate instead of the intended vendee.

The court say in that case, that the simple claim is, that "Harris bought, as agent of the mother, and took the title in her name, for her benefit."

The same statement is made of the case of Barbin vs. Gaspard, 15th Ann., 540.

The same is true of Fuselier vs. Fuselier, 5th Ann., 132; and Heiss vs. Cronan, 12th Ann., 213; and Linton vs. Wikoff, 12th Ann., 878. The same doctrine was reiterated in the case of McKenzie vs. Bacon, 40 Ann., 157.

That rule is undoubted, and has been maintained in many cases where real contracts were sought to be avoided by the introduction of parol proof.

Counsel for defendant cites the case of Thomson vs. Whitbeck, 47 Ann., 49, as sustaining his view as to the non-admissibility of parol testimony in support of a wife's allegation of simulation; but we have carefully examined and considered that case, and failed to find in it any reference to that question. It may have some pertinency to the merits of the case when same are under consideration.

In favor of plaintiff's right to introduce parol evidence in support of

the allegations of her petition, her counsel cites and relies upon Vick-nair vs. Trosclair, 45 Ann, 373, and therefrom we make the following quotation, to-wit:

"The wife sued for property which she says was wrongfully sold by her husband. There is no attempt made to contradict the fact of the execution of the authentic acts. Their nullity is urged. It is well settled that in suits of this character, the doctrine of estoppel, as usually understood, does not apply to the wife; that she can resort to parol testimony to show the real character of the transaction, and that in attacking authentic acts, she is not confined to counter letters and interrogatories on facts and articles.

"Harrang vs. Blanc, 34 Ann., 632; Moore & Coleman vs. Rash, 30 Ann., 1157; Chaffe vs. Oliver, 33rd Ann., 1010.

"The effect of the attack on the authentic act by the wife is that it destroys the title held adversely to her and restores her to her just rights; reinstating title in her is the object sought by the exception in her favor. It springs from the necessity of the case, the wife being under the presumed control and dominion of her husband.

"To deny the exception in her favor would be to deny her the benefit of the provisions of the law enacted to protect her interest in preventing imposition upon her."

In Chaffe vs. Oliver, 33 Ann., 1008, Mr. Justice Fenner, in speaking for the court, made the following very just observations, with regard to the rule of admissibility of parol evidence in such cases as the instant one, to-wit:

"It is settled, to epitomize our jurisprudence, that such transactions can not be sustained; that the wife and her legal representatives can not be bound thereby; that she may attack and annul them, or may defend against them; that she is not estopped by her own acts in aid of the transactions which are presumed to be done under marital influence; that whatever the form of the contract, its true character may be inquired into and laid bare; and that, in her assault upon even authentic acts, she is not confined to counter letters and interrogatories on facts and articles, but may resort to parol evidence to establish their true nature and purpose. See on these different points, 14 Ann., 169; 16 Ann., 11; 5 Ann., 572; 2 Ann., 756; 12 Ann., 852; 12 Rob., 84; 1 Ann., 429; 4 Rob., 508."

We consider it entirely unnecessary to carry this investigation further, as we think the doctrine is well settled, that when a controversy

involving the question of a simulated sale from a wife to her husband is presented for consideration, parol evidence is undoubtedly admissible. We do not think this is a matter of serious controversy.

The evidence discloses the following pertinent facts:

That a judgment was rendered on the 17th of November, 1866, decreeing a separation of property between Mrs. M. B. Douglass, wife, vs. James S. Douglass, husband, and also for a sum of $2000,00 in money; and that said money judgment was regularly executed.

That James M. Gillespie executed to Mrs. M. B. Douglass a deed, bearing date 13th of April, 1868, to the Lake plantation, which was filed and recorded; and it was therein stated that the property was purchased with her separate paraphernal funds, and that the same was to be her paraphernal property.

One witness states that of the 530 acres of land embraced in this suit, about 200 were cleared and in cultivation, and that the whole of the Lake plantation is worth from thirty to forty dollars per acre, and could not be purchased at that price. The testimony discloses that Mrs. Douglass and her husband resided upon the Lake plantation from the time of its acquisition until 1890, when he died. That all of her children were born on that place, and that all lived thereon as one family.

That, during the lifetime of her husband, James S. Douglass, he had the management and superintendence of her business and her plantation; and after his death her son, George Douglass, exercised like control and management for her. That she and her family are residing on said plantation at this time.

It further shows, that neither of the children claimed any interest in the property at any time; that George Douglass states that he is 33 years old, and has always lived upon the plantation with his mother; that he has no interest whatever in the property in controversy; always thought his mother owned it. Says, "he never questioned her title and always thought it good."

"Was much surprised to learn that there was a flaw in her title."

That since his father's death, he has had the management of his mother's business.

It appears that all parties who figured in these transactions are dead, with the exception of Judge Wade H. Hough, who resides in a parish in the vicinity of Tensas parish; and, that, while the suit was actually filed a few days subsequent to the death of J. D. Newell, a

member of the firm of Halsey & Newell, attorneys, yet it had been prepared some time previous to his death.

The petition which said attorneys prepared in the name of the plaintiff, simply recites, that it was her desire to sell a part of her plantation, and that she wished to procure the judge's authorization, because her husband had declined to authorize the sale.

The order is in these words:

"The foregoing petition considered, it is ordered that Mrs. Mary A. Rollins, wife of James S. Douglass, be authorized to sell the property herein described.

"Done and signed this 7th day of January, 1881.
(Signed)                  WADE H. HOUGH,
                      "Judge Ninth District."

The deed under private signature from Mary B. Rollins to J. B. Guthrie bears date, January 8, 1881, and purports to convey the property described in said petition, for the ostensible price of $800 in cash; and the private signature deed of same date, purports to convey the same property from J. B. Guthrie to James S. Douglass, and for a like consideration.

Both of said deeds were duly recorded soon after their date.

The statement of the plaintiff is, that she had scarcely any acquaintance with Mr. Halsey, of the firm of Halsey & Newell, but was well acquainted with Mr. Stokes Newell, the other member of the firm. That she had no knowledge of the petition or the order of the judge, authorizing her to sell the property, and has no recollection of ever having seen it.

That she never had any conversation with either Halsey or Newell in reference to it. That if any one gave them authority, it must have been her husband. He must have conducted all the proceedings leading up to the execution of the documents A, B, and C, in evidence. She states that she has not the slightest recollection of the transaction, or of the execution of the documents. That it must have been at her husband's request; he must have requested her to sign the act. She states that she certainly would not have, knowingly and intentionally, sold for $800, property which, at that time, was worth $7,000.00. She states that at the time of the sale, Dr. Guthrie had only recently moved to the parish of Tensas, and consequently, her acquaintance with him was limited.

That prior to the sale to Douglass, she had no conversation, nego-

tiation, or transaction with him in reference thereto, and had authorized no one to make any for her. She states that up to the death of her husband, he managed her business for her; and since that time she has had the exclusive control of her plantation.

That, after the execution of said deeds, no change of the control, management or administration took place in reference to the property now in contest.

That the first knowledge she had of these documents, was in 1898, when she accepted an offer of $25,000 for the property, and had an investigation of title made; then, for the first time, the said deeds were discovered and brought to her attention.

She states that there was no consideration ever paid to her for said property, at any time, nor to any one for her.

Judgment was rendered in the suit of Chambers, Roy & Co., in liquidation, against George Douglass, the defendant, for $990.63, on the 19th day of November, 1897; and same was, at once, recorded as a judicial mortgage.

No witnesses were introduced on the part of the defendants, and their reliance seems to have been upon cross-interrogatories propounded to the plaintiff and George Douglass. Consequently, we are not advised of the character of the indebtedness upon which the judgment of Chambers, Roy & Co., in liquidation, was founded.

There is nothing in the record to show that they had any knowledge of the situation of the Lake plantation, or of its management.

There is nothing to show what was the character of the business of Chambers, Roy & Co., in liquidation, nor what their relations with George Douglass were. Hence, we do not know and can not assume that said indebtedness was contracted upon the faith of George Douglass having an interest in said property.

The only fact we have before us is, that they recovered the judgment in 1897, and recorded it in the parish of Tensas, where the property in controversy is situated.

But, we gather from the testimony that Mrs. Douglass desired to obtain a loan of money from some mortgage company upon the property, and that resulted in an investigation of the title; and this investigation disclosed the existence of the deed from the plaintiff to Guthrie, and from Guthrie to her husband, which brought about this litigation.

Whether this discovery superinduced the action of Chambers, Roy

& Co., in liquidation, in instituting their suit against George Douglass, we are not prepared to say from the evidence; but it does appear that same immediately followed the discovery being made.

On the evidence related, our conclusion is, that the plaintiff has made out her case completely, and has established by a clear preponderance of proof, that the deed from herself to Guthrie, and that from Guthrie to her husband, were wholly without consideration.

And not only so, that there was no change of possession, dominion or control of the property afterwards; but that she and her family continued to reside on the plantation and to operate and control the same, just as she had done ever since its acquisition.

There is no proof in the record which in any wise tends to militate against her claim that the Lake plantation was her separate paraphernal property; nor that the judgment of separation of property between herself and husband was either irregular or invalid.

Not one of the seven major heirs of James S. Douglass makes any claim to the property, but, on the contrary, have always regarded their mother's title as perfect, and disavow any interest in it.

But, notwithstanding all this, the principal question to be decided is, whether Chambers, Roy & Co., in liquidation, have a judicial mortgage on the undivided interest of George Douglass which can be enforced against the property without regard to the established simulation of the title of their father.

The contention of counsel for Chambers, Roy & Co., in liquidation, is, that it is a third and innocent party therein, in no way bound or affected by the secret equities and latent ambiguities in the title of James S. Douglass; but that the registry of its judgment, by mere operation of law, operates as a judicial mortgage upon the apparent interest of its debtor therein, notwithstanding the actual simulation of its ancestor's title thereto.

In support of that proposition he cites the case of Lester vs. Connelly, 46 Ann., 340.

In that case the wife separated in property, sold her property, partly upon terms of credit, represented by negotiable promissory notes secured by mortgage and vendor's lien thereupon; and our opinion holds that she could not have a nullity of the transaction declared to the prejudice of third and innocent holders of said notes, before maturity.

In support of that proposition, the following cases were cited:

Chaffe vs. Oliver, 33 Ann., 1008; Schepp vs. Smith, 33 Ann., 1; Succession of Forstall, 39 Ann., 1052; Bank vs. Flathers, 45 Ann., 75; Vicknair vs. Trosclair, 45 Ann., 373.

In Broussard vs. Broussard, 45 Ann., 1085, it was held, that if a party purchased property on the faith of the apparent validity of the title placed on record by the plaintiff without knowledge of the real character of the transaction, his title will be protected against the demand of the wife.

It was further held, that there was no distinction in principle between the purchaser of property and the third holder of separate mortgage notes before maturity.

Same rule is well settled in Thompson vs. Whitbeck, 47 Ann., 49, from which we make the following extract:

"Nothing is better settled than the validity, as against the real owner, of sales and mortgages by those to whom the owner has conveyed title, if the purchasers and mortgagees are in good faith acquiring their rights on the faith of the recorded title.

"The principle is extended to sales by married women, notwithstanding all the protection thrown around their contracts."

In that case the wife, aided by her husband, sold the property to Ford, and he borrowed money from the plaintiff upon the faith of their notes and mortgage; and our opinion held, as in other cases, that the wife could not revoke the sale to Ford, on account of the latent defects in the title, to the prejudice of the holder of the mortgage notes before maturity.

In Chaffe vs. Oliver, 33 Ann., 1008, the underlying principle involved was thus stated, to-wit:

"Of course, these doctrines have their limitations, when they involve the rights of innocent third persons, who have *acted* in good faith upon the apparent validity of such transactions."

But in our opinion, these doctrines have no bearing upon the question now under consideration.

They relate exclusively to *contracts* of sale or conventional mortgage upon the faith of which *some value* has been predicated, or money loaned; in other words, on the faith of which some innocent third person has *acted.*

Under such circumstances, the law considers it inequitable to allow the rights of such third person to be prejudiced; doubtless in consideration of the equitable maxim that if one of two innocent persons

.must suffer, the loss must be borne by the one whose act primarily .superinduced it.

In the instant case, there is no evidence tending to show that Cham-.bers, Roy & Co. in Liquidation gave to George Douglass credit on account of his supposed interest in the property in suit; nor that the relations between them of creditor and debtor were brought about on account of any such supposed interest therein. Nor that it had any knowledge of his having had any such supposed interest in it.

Notwithstanding it was duly cited to answer the allegations of fraud .and simulation which the plaintiff preferred against the title of James S. Douglass, and joined all his heirs as its co-defendant therein, George Douglass among the number, not a single witness was interrogated by the company; and not one was interrogated by it under .commission.

All of the members of the company remained silent, and the statements of George Douglass and his mother remain uncontradicted.

The company could have been easily advised of the *actual state* of :the title of George Douglass before it gave him credit, if in fact it was upon the faith of it it intended to act; or, at least, by having made an investigation of the conveyance records of the parish there .could have disclosed the state of facts which is presented in the record before us, and any further trouble or expense obviated.

Not having done so, their alleged equitable estoppel fails them alto-.gether.

In Layman vs. Vicknair, 47 Ann., at page 686, this court said:

"In looking up titles and mortgages parties are held to examine act by act, mortgage by mortgage, and not to place any blind faith in references to books, numbers and papers, much less to the mere *ipse dixit* of a notary.

"A copy of the act of sale last mentioned being in the record, we have examined the sale (as it was the duty of all parties relying ex-.clusively 'on the faith of the public records' as the ground for maintaining their rights to have examined it), and in this act from *Naquin to the husband* we find it declared that, the property then being conveyed was '*the same property acquired that day before the undersigned notary of Mrs. Felix Lasseigne.*' The record would, therefore, have disclosed the fact that upon the same day, before the same notary, and before the same witnesses, 'the property which· ostensibly

passed from the wife to Naquin for cash, ostensibly passed at once from Naquin to the husband.

"A record showing such facts was not of such a character as to form the basis of a claim by any one who dealt with the husband or with Trosclair (the vendee from the husband) that he had been deceived into contracting with them through the condition of the public record, and that 'his mortgage rights could not be defeated by secret equities between the original parties of which neither the act nor the public records afforded any notice or means of information.'

"We are of the opinion that when the records show on their face, as it did in this instance, that the property once belonged to the wife, and that when it passed ostensibly from her it went afterward into the apparent ownership of the husband, any one looking at the acts would have been or should have been, at once *placed on his guard* as to the reality and good faith of the transactions."

In Securities Co. vs. Talbert, 49th Ann., at 1402, this court said:

"We regard the two acts before Ford as parts of one and the same transaction and think they should be read and taken together.   *   *   * We think the parties can take nothing by separating the two acts; their connection is visible and their separation was more likely, as we have said, to have led up to the wife being taken at a disadvantage than had one single act been resorted to."

The provisions of law governing judicial mortgages is important in this connection, as they declare, that "the judicial mortgage may be enforced against all the immovables which the debtor *actually* owns, or may subsequently acquire."

Revised Civil Code, 3328 (3296).

In Voorhies vs. DeBlanc, 12 Ann., 864, the court in construing the aforesaid article said, that an entire succession, disregarding the elements which enter into its composition, is not an object susceptible of mortgage.

A judicial mortgage will not attach to an immovable action as distinguished from the property which is the subject of the action; nor to the interest of the debtor in the movables, slaves and immovables which composed the active mass of the succession falling to him as heir.

"We, therefore, conclude," say the court, "that 'an action for the recovery of an immovable estate or an entire succession', although

" by legal intendment considered an incorporeal immovable, is not
" susceptible of mortgage.

"Still less do we think that an entire succession, disregarding the
" elements which enter into its composition, can be mortgaged."

The proposition we have under consideration in this case is, that
Chambers, Roy & Co., in Liquidation, acquired a judicial mortgage
upon the unliquidated interest of George Douglass in the succession
of his father, in contradiction of the statement of the court in that
case.

In Broussard vs. Sheriff, 44th Ann., 880, this court expressed the
following view upon the identical question under consideration in the
following words:

"It is quite true as a matter of equity—and this court has repeatedly
" maintained the principle—that in case a party in possession under
" a recorded title executes a special mortgage thereon in favor of a
" third and innocent mortgagee, who advances money upon it, neither
" he nor his vendor can successfully attack and defeat it, on making
" proof of secret equities and latent ambiguities in the title; but we
" are not aware of this principle of equity having been extended so as
" to embrace a judicial mortgagee whose rights arise by simple opera-
" tion of law."

Again:

"But, in any event, this principle is without application when the
" mortgagor is out of possession of the property mortgaged, as in this
" case.   Hunter vs. Buckner, 29 Ann., 604."

Applying the principles of that case to the instant one, we consider
it exactly appropriate, as the proof in this case discloses that George
Douglass, the alleged judicial mortgagor, was not in possession at the
time of the registry of the judgment of Chambers, Roy & Co., in Li-
quidation.

In Mallard vs. Carpenter, 6 Ann., 397, it was held, that a judicial
mortgage can not affect slaves which are not attached to the planta-
tion at the time of its registry.

Counsel for the defendant company claim to have found two decided
cases in opposition to these views.

One of those is Stockton vs. Craddock, 4th Ann., 232, which was a
case of attachment that was resisted on the ground that the debtor
had no title, and the court said:

"We think there is no evidence charging the plaintiff with notice of

the character of this title, and the matter is, therefore, reduced to a naked question of law."

The court then announced the principle that "where a fraudulent " vendee of slaves, under a title valid in point of form and having the " appearance of verity and good faith on its face, *mortgages them* to " an antecedent creditor, who is ignorant of the fraud, his right will " not be affected by the fraud between the original parties to the sale."

Another is Robertson vs. Wood, 5 Ann., 197. In that case, suit was brought to enforce a judicial mortgage upon a tract of land resulting from the registry of a judgment against one Rowley, who had entered the land in his own name, and thereafter mortgaged same by authentic act, and subsequently sold same to one Wood under whom the other defendants claim.

Under these circumstances, the court held that proof tending t/ show that Wood was a party who had really entered the land, and not Rowley, was inadmissible to effect the rights of the judicial mortgage creditor.

The foregoing statement of those two cases is sufficient to show their total inapplicability to the question under consideration.

The former case is controlled by the principles announced in Thompson vs. Whitbeck, cited *supra* and analyzed, as it was predicated upon a conventional mortgage.

The latter case is controlled by the cases of Perrault, 32nd Ann., 636, and Gartskamp, 30 Ann., 898, above cited, which are to the effect that parol testimony is admissible for the purpose of showing that the party to the title was not the real owner in a suit where there is no charge of simulation or other absolute nullities. The last case cited involved no such question.

The case of Jones vs. Jones, 51 Ann., 636, 25 So. Rep., 368, is identical in principle with Thompson vs. Whitbeck—Mrs. Jones having contracted a loan of thirteen thousand dollars in favor of the Union Mortgage Banking and Trust Company, Limited—and our opinion said: "It can not be held to have any force or effect as against the mortgage company, who acted on the faith of the public records which showed title in Mrs. Jones alone."

In our opinion, the view expressed in the recent case of Succession of Manson, 51 Ann., 130, 25 So. Rep., 689, is conclusive, and comes to the support of the opinion we expressed in Broussard vs. Sheriff, *supra.*

93

In that case we said:

"The effect of the mere registry would not have been so potent as to vest in her a mortgage, when in point of fact the property had never belonged to the co-tutor; and he not only had never assumed ownership in it, but had *ab initio* recognized the property as belonging to the bank."

In Kern vs. Day, 45th Ann., 71, this court held, that an attaching creditor of one who appears upon the books of a corporation as registered owner of shares of stock, can not hold the stock against the true equitable owner who holds the certificate of stock duly endorsed by the debtor; and no estoppel arises to prevent the true owner from asserting his title. His permitting the debtor to appear as holder on the books of the corporation, did not invest the latter with such *indicia* of ownership as could prejudice third persons.

That case was decided not to be dissimilar in principle to that maintained in Bank vs. Williams, 43rd Ann., 422, in which case we said of the claim of the creditor of a registered owner of a vessel who had seized it and attempted to hold it against the true and equitable owner, to-wit:

"It is claimed, however, that, as attaching creditors, they have acquired rights superior to those of their debtor, and can maintain his title, though he himself could not.

"This is contrary to the general principles of attachment, which give to the attaching creditor no higher or better right than his debtor had to the property attached."

Pitot vs. Johnson, 33rd Ann., 1286; Factors' Insurance vs. Dock Company, 31st Ann., 149; Smith vs. Slaughter House Company, 30 Ann., 1378.

This analysis of authority in our opinion demonstrates the incorrectness of defendant's supposition that its judicial mortgage holds the property in controversy within its grasp, despite the charge and proof of simulation.

We are of the opinion that its demand in this respect was correctly disposed of in the lower court.

## IV.

The remaining question for consideration, is the effect of the act of relinquishment which was executed by George Douglass and his brothers and sisters of age, on the 23rd day of July, 1898, in favor of their mother, the plaintiff.

Defendant's counsel earnestly press upon our attention, that effect should be given to that instrument as a complete estoppel against the plaintiff. That document is one under private signature, and purports to be in terms a release, quit-claim, or relinquishment of any and all apparent interest that the héirs of James S. Douglass had in and to the property in dispute.

The proof shows that this act was executed upon the motion of the heirs themselves, and, as they supposed, the correct method of obviating any difficulty, and of removing any cloud their father's deed might cast upon the title of their mother—not doubting, but believing that her title was perfectly good. That instrument was in date long subsequent to that of the registry of the judgment of Chambers, Roy & Co., as a mortgage, and consequently, could not affect any possible right of theirs upon the property.

To this document, the plaintiff was no party; never signed the act; paid nothing therefor; and never accepted same, or acted under it.

This act recites that, whereas they have discovered that the property in controversy appears in the record to have been acquired by their father, and that the aforesaid deeds operate as a cloud upon the title of their mother thereto, and "being desirous of assisting her to clear " the said title and to relieve and relinquish and forever quit-claim "unto and in favor of their said mother * * * any interest " they may have as five of said heirs of their said father in said prop- " erty, by virtue of said conveyances, etc."

George Douglass, a witness, states that said document was prepared by Clinton & Graham, attorneys, at his own request, and that his mother had nothing to do with it, though she had knowledge of it. That she paid nothing whatever therefor.

In our conception this quit-claim, voluntarily executed by the major heirs in favor of their mother, with whom they resided, and whose title they recognized, was but a just and praiseworthy act and done without any intention of injuring any one. It was spontaneously executed after the registry of a judgment of Chambers, Roy & Co., in Liquidation.

Whatever rights they had, existed long anterior to its execution.

The plea is not good.

Upon due consideration of the evidence, and of the various decisions cited, we have reached the deliberate conclusion that the judge of the lower court properly disposed of the issues presented.

Judgment affirmed.

BLANCHARD, J., dissents, holding that the interest in the property of George Douglass as heir of Jas. S. Douglass, should be adjudged amenable to the judicial mortgage rights of Chambers, Roy & Co.