PROVOSTY, J.
In the present suit, the plaintiff bank sued out executory process upon two mortgages of unequal rank, bearing, to some extent, upon different properties. The mortgage first in rank bore upon two tracts of land situated, respectively, in the parishes of Jefferson Davis and Allen. The one second in rank did not bear upon the property situated in the parish of Jefferson Davis, but only upon the property situated in the parish of Allen. These mortgages were executed by the defendant, Garlick. The one first in rank was made in favor of one Wallace, the other, in favor of the plaintiff bank. Mrs. Martha E. Garlick, wife of the defendant, intervened in the suit, claiming, that the Jefferson Davis parish property belonged to her, and so belonged at the time her husband executed upon it the said mortgage in favor of Wallace, and that said mortgage is in consequence null. She asked that said mortgage be annulled, and in the alternative that the plaintiff bank be required to-exhaust its recourse against the Allen parish property before coming against her said property. Writs of seizure and sale issued to the sheriffs of said two parishes, and by the time the suit came to judgment the two' properties had been sold under said writs for cash to satisfy both mortgages. The judgment was adverse to Mrs. Garlick. She filed *285 a motion for a new trial; and in this motion, still by way of alternative demand, asked that the proceeds of the said two sales be attributed to the satisfaction of the said first mortgage, and that the remainder of said proceeds after payment of said first mortgage be turned over to her.
[1, 2] The said Jefferson Davis parish property, now claimed by Mrs. Garlick as her own, was acquired by Mr. Garlick from one Baldey, who some four years previously had acquired it from Mrs. Garlick. The contention of Mrs. Garlick is that her sale to Baldey was a mere contract of security for a debt of her husband, and that Wallace, to whom the mortgage was given, was aware of that fact. The plaintiff bank, on the other hand, denies that Mrs. Garlick was ever owner of the property, and contends that it was community property, and that at all events neither Wallace nor it knew anything of Mrs. Gar-lick’s said alleged rights when accepting the mortgage, and therefore cannot be affected by same. We have found it unnecessary to investigate these questions of fact, since we are clear that said alleged rights of Mrs. Garlick, if existing and known to Wallace when he accepted the mortgage, could not affect the plaintiff bank, who admittedly acquired the said mortgage in ignorance of said alleged rights, upon the faith of the public records. Third persons wishing to purchase real estate, or to accept a mortgage upon same, or to purchase a mortgage already existing upon same, have the absolute right to guide themselves by the public records. In the instant suit, the two acts of sale — that of Mrs. Garlick to Baldey and that of Baldey to Garlick — were duly recorded, and had absolutely nothing on their face to warn the plaintiff bank of the right of ownership now being set up by Mrs. Gar-lick.
The learned counsel for Mrs. Garlick say that when the public records show, as they did in this case, that the husband’s vendor acquired from the wife, third persons dealing with the husband are put upon inquiry,, and must come prepared with proof that the sale by the wife to the husband’s vendor was a real and bona fide sale, and not a mere cloak for securing a debt of the husband, or-transferring the title of the wife to the husband. In support of this contention the-learned counsel cite Vicknair v. Trosclair, 45 La. Ann. 375, 12 South. 486, Layman v. Vicknair, 47 La. Ann. 679, 17 South. 265, and Douglass v. Douglass, 51 La. Ann. 1455, 26 South. 546.
In the first of these cases, two neighbors, named Dasseigne and Trosclair were desirous of making an exchange of lands, but encountered an obstacle in the fact that Dasseigne was not sole owner of his land, his wife owning a one-eighth interest in it. To-overcome this obstacle, these two neighbors resorted to the expedient of Mrs. Dasseigne making a simulated sale of her one-eighth interest to one Naquin, and the latter, in turn, making a simulated sale to Dasseigne. The wife, in a suit against Trosclair, upon proper allegations, was allowed to show the true character >of these simulated sales. Needless to say, such a case does not present even the most distant analogy with the one at bar.
The second of these cited cases (Layman v. Vicknair, 47 La. Ann. 679, 17 South. 265) grew out of the same exchange of property. Bach of the two properties that were exchanged was burdened with a mortgage, and a part of the exchange agreement was that the mortgages also were to shift. To that end the exchange was given the shape of two reciprocal sales on a credit, the credits-corresponding with the amounts of the mortgages. So that the tract transferred to Trosclair in exchange (including the one-eighth of Mr. Dasseigne) became burdened with a mortgage and vendor’s privilege corresponding in amount with the mortgage that had theretofore rested upon the tract transferred, *287 to Lasseigne. Notes were executed for the amount of this mortgage and vendor’s privilege, and these notes were acquired before maturity by Layman; and when he sought 'to foreclose on same, Mrs. Lasseigne enjoined the foreclosure in so far as her one-eighth interest was concerned. The court recognized the legal necessity of protecting against secret or unrecorded claims of the wife third persons who have purchased real estate, or accepted a mortgage upon same, on the faith of the public records, but thought that where, as in that case, the sale by the wife to the husband’s vendor and the sale by this vendor to the husband appear to have been made on the same day before the same notary and witnesses, this close relation of the two acts shows that the two sales were in reality but one transaction, designed to invest the husband with the wife’s title, and amounting to nothing more than a sale by the wife to the husband. “A record showing such facts,” said the court, “was not of such a character .as to form the basis of a claim by any one who dealt with the husband or with Trosclair that he had been deceived into contracting with them through the condition of the public records.” True the court' arguendo used expressions much broader than this, but the syllabus correctly states the doctrine of the case. It is to the effect that:
“When the public records disclose the existence of equities or facts from which presumptions of their existence flow, parties taking mortgages are put upon inquiry.”
In the case at bar, the two sales — that by Mrs. Garlick to Baldey, and that by Baldey to Garlick — were not made on the same day, or before the same notary and witnesses, but .some four years apart, and before another notary and other witnesses, and were on their face absolute.
The third of the said cited cases (Douglass v. Douglass, 51 La. Ann. 1455, 26 South. 546) did not present the feature of a third person accepting a mortgage, or purchasing outright from the husband, upon the faith of the public records; and as that feature is the. only one with which we are now concerned, the case is not at all in point. It was a case where, as in Yicknair v. Trosclair, supra, two simulated sales had been made, one by the wife to the husband’s vendor and another by this vendor to the husband, on the same day, before the same notary and witnesses, and where the suit was by the wife to show the simulated character of the two sales. No one had purchased from the husband, or accepted a mortgage from him. But the husband had, died, and a judgment creditor of one of his heirs was claiming that a judicial mortgage had attached to the interest of this heir.
[3] The note secured by the Wallace mortgage was acquired by the plaintiff bank after its maturity, but that circumstance can exercise no influence in the case. As was said by this court in the Layman v. Yicknair Case, supra:
“The time at which” the notes sued on were acquired “plays no part in the decision of this ease. We have to deal, not with the notes, but with the condition of the property as it appeared of record.”
[4] We pass, then, to the alternative demand of Mrs. Garlick. The facts necessary to be stated in connection with it are that the mortgage to Wallace was given in February, 1904; that .some five years later, in February, 1909, Garlick made a dation en paiement of the Jefferson Davis parish property, upon which the Wallace mortgage bore, to his wife; that a few months later, in July, 1909, he gave to the plaintiff bank the mortgage upon the Allen parish property; that the plaintiff bank, in order to protect its said second mortgage, purchased the Wallace mortgage; that the Wallace mortgage amounted, on the day of the foreclosure sale, in capital, interest, attorney’s fees, and costs, to $5,967.29, and the other mortgage to over $4,000; that the Jefferson Davis parish property brought $2,150 at the foreclosure sale, and the Allen parish property $5,340; that *289 prior to tlie filing of Mrs. Garlick’s motion for a new trial, in which slie asked that the proceeds of both of the said sales be attributed to the satisfaction of the Wallace mortgage, an,d that the balance after payment of said mortgage be turned oyer to her, the said proceeds had been paid oyer by the sheriff to the plaintiff bank in satisfaction of both mortgages.
From the foregoing facts it is seen that the primary right upon the property in both parishes was in the plaintiff bank as holder of the Wallace mortgage, and that the secondary right upon the Jefferson Davis parish property was in Mrs. Garlick, as owner thereof by virtue of the dation en paiement made to her, and the secondary right upon the Allen parish property was in the plaintiff hank as holder of the second mortgage. Mrs. Garlick’s learned counsel argue that as an effect of her property being' taken to pay this Wallace mortgage she would be subrogated pro tanto to the rights of the plaintiff bank as holder of this mortgage, and, as such, would be entitled to take a corresponding amount out of the proceeds of the sale of the Allen parish property by preference over the second mortgage creditor, and hence that the balance left of the proceeds of the sale's of the two properties after satisfaction of the Wallace mortgage, is payable to her, as otherwise there would simply be a circuity of payments ; for after the proceeds of her property had gone towards paying the Wallace mortgage, she, as subrogee, would be entitled to come against the proceeds of the sale of the Allen parish property in a corresponding amount.
There can be no doubt at all that, under article 2161, O. G., Mrs. Garlick would be subrogated to this Wallace mortgage in so far as her property had gone towards paying it; but theré can also be no doubt that the plaintiff bank, as holder of the second mortgage, would, in like manner, be subrogated, under the same article, to this Wallace mortgage in so far as the Allen parish property had gone towards paying it, so that the two rights offset or nullify each other.
Of the plea of discussion contained in the answer, suffice it to say that the plea of discussion cannot be opposed to a creditor haying a special mortgage. G. G. art. 3404; O. P. art. 73.
[5] The learned counsel of Mrs. Garlick are right, however, to this extent: That where a mortgage rests upon two properties belonging to different persons and is of less amount than the value of the two properties, the two properties must contribute in proportion to their value towards the payment of the mortgage; that one of them cannot be discriminated against in favor of the other, and made to bear more than its proportionate share of the common burden. Succession of Anger, 36 La. Ann. 252; Willey v. St. Charles Hotel Co., 52 La. Ann. 1592, 28 South. 182; Blanchard v. Naquin, 116 La. 806, 41 South. 99. So that, in the instant case, Mrs. Garlick and the plaintiff bank, as the holders of the secondary rights upon the two properties in question, were entitled to share the balance left after the payment of the first mortgage in the proportion in which they contributed to the fund of which said sum is the balance. According to this, Mrs. Garlick was entitled to take $437.17, and the plaintiff bank $1,085.83 of this balance.
[6] The foreclosure sale of the Jefferson DaVis parish property took place on October 4, 1913, and that of the Allen parish property on October 18, 1913; and the proceeds of these two sales, save costs, were paid to the plaintiff bank as of those dates. Mrs. Gar-lick’s motion for a new trial, in which she asked that these proceeds be apportioned, was not filed until October 23, 1913. The learned counsel for the plaintiff bank contend that the said prayer of Mrs. Garlick for this marshaling of these assets came too late aft *291 er tlie assets Lad passed into the Lands of the plaintiff bank and out of the custody of the court.
We Lave to agree with that view. After funds Lave been paid to the seizing creditor it is too late for third persons to seek to intervene and claim them. Whether Mrs. Garlick might not Lave a right of action against the plaintiff bank for an accounting to her for that part of these proceeds to which she was thus entitled is another question, and one upon which we express no opinion, reserving to her, however, whatever rights she might have in that connection.
[7] The husband’s motion for imputation of payments we have passed over in silence, as he is without interest in the premises. And we have given no attention to the alleged defects in the appeal bond, for the reason that the appellee has not moved for the dismissal of the appeal, but, on the contrary, has filed an answer asking for the affirmance of the judgment.
The judgment appealed from is therefore amended so as to make in favor of Mrs. Gar-lick the reservation of rights mentioned in this opinion, and, as thus amended, is affirmed; Mrs. Garlick to pay the costs of this appeal.