## MARY COURTNEY v. J. H. DAVIDSON.

APPEAL from the District Court of St. Helena, *Penn*, J. *Watterson*, for plaintiff. *E. T. Merrick*, for defendant. The judges of the court delivered their opinions *seriatim*.

PRESTON, J. This suit is instituted to recover a thousand dollars, upon the following compromise of a suit, entered as the judgment of the court before which it was pending: " *William B. Kinchin* v. *John Hindes Davidson*, and *William Kinchin* and *Wife*, in warranty. Eighth Judicial District Court, Parish of St. Helena. It is agreed by the plaintiff and warrantors, that the sale, so far as it regards the slaves *Clem* and *Minerva*, be confirmed and decreed the property of the defendant, at the price and sum of one thousand dollars, to be settled by defendant and warrantors, without prejudicing the rights of plaintiff against his tutor *William Kinchin*. That said sale, so far as it regards the six hundred and forty acres of land, the slave *Rachel* and her child *Jane*, be cancelled, reversed and set aside, and said two slaves delivered to the warrantors, *William Kinchin* and *Mrs. Mary Courtney* his wife. And that as between plaintiff and warrantors, that said case be referred to the Probate Court of the parish of Livingston to be settled according to law; and that the costs of this suit be paid out of the community formerly existing between *William Kinchin* and the mother of plaintiff; and that if warrantors are entitled to the hire of said slaves, that the same be settled by arbitration. (Signed,) JESSEE R. JONES, Judge of the Eight District. May 23d, 1845."

The plaintiff, *Mary Courtney*, claims one thousand dollars as the price of the sale of the slaves *Clem* and *Minerva*, confirmed by the compromise and decreed to be the property of *John H. Davidson*, the defendant. She claims from him further, five hundred dollars for the hire of the slaves *Rachel* and *Jane*, from

6   453.
46   344
6   453
111   414

the 16th of December, 1843, when they were sold, until the 23d of May, 1845, the date of the compromise.

The plaintiff is the widow of *William Kinchin*. On the 4th of October, 1841, she obtained a judgment of separation of property from him, and for $2050 as the amount of property brought by her in marriage and acquired by inheritance. She caused the slaves and tract of land, mentioned in the compromise, to be sold under execution, as belonging to her husband, and on the 3d of September, 1842, purchased them for fifteen hundred dollars.

On the 16th of December, 1843, being authorized to that effect by her husband, she sold the land and slaves to *John H. Davidson*, the defendant, for $1850, purporting, by the act of sale, to have been paid in cash. But it is satisfactorily proved, that the purchaser in reality gave in payment the following obligation of *Thomas G. Davidson:* "I hereby bind myself to pay *Mary Courtney* or *William Kinchin*, or their order, the sum of eighteen hundred and fifty dollars: five hundred in cash, and the balance in the debts of *William Kinchin*, if he owes that sum, and if not in money. December 16th, 1843. THOMAS GREEN DAVIDSON."

In January, 1844, the children of *William Kinchin*, by a former wife, brought suit against him for their maternal inheritance, and the settlement of the community of acquets which had existed between him and their mother, which he had never liquidated. They made *Davidson*, to whom the land and slaves had been sold, a party to the suit, and claimed the undivided half of the property by inheritance from their mother, and a legal mortgage upon the other half for sums squandered, as they allege, by their father, and denied the claims of his second wife, and the validity of her purchase of the land and slaves. *Kinchin* denied the claims of his children by the first wife; charged fraud against the *Davidsons* in obtaining the sale of the land and slaves, and non-compliance with the payments agreed to be made, and prayed that the sale might be annulled. The compromise which gives rise to the present suit, was thereupon made and entered, and signed as a judgment of court.

By this compromise, it is clear that two things were done. The sale of the land and of the slaves *Rachel* and *Jane*, was annulled, and they were returned to *Kinchin* and wife; and the settlement between the father and his children as to the property so returned to him and his wife, was referred to the Probate Court of the parish of Livingston. But the sale of the slaves *Clem* and *Minerva*, which had been attacked by *Kinchin* and his children, was confirmed to *John H. Davidson*, the defendant, and their price was fixed at a thousand dollars.

That price was to be settled between *Davidson* and his warrantors, *Kinchin* and wife. But how to be settled? By the payment to her of the thousand dollars? We think not; but by complying with the terms of the original sale which was thus confirmed. In the authentic act of sale, cash had apparently been paid, though not in reality; but an obligation of *Thomas G. Davidson* had been given to pay less than a third in cash and the balance in debts of *William Kinchin*. The words of the compromise, "to be settled between *Davidson* and his warrantors," fairly bear this construction. And it cannot be supposed for a moment that *John H. Davidson*, one of the parties, would have agreed to pay, by way of compromise, a thousand dollars, the full value of the slaves confirmed to him, when he had already, through his brother and in pursuance of the obligation given at the time of the purchase, settled and paid in cash and debts of *William Kinchin* about the same amount, although now evicted of the land and the other two slaves.

On this part of the subject there can be but little doubt; but the counsel of the plaintiff has raised and urged with force, and indeed the case presents a much more difficult point. He contends, that the two slaves, *Clem* and *Minerva*, were the property of the plaintiff by their adjudication to her in the suit against her husband; that she sold them to the defendant, and that their price could not legally be appropriated to the payment of her husband's debts, and that, therefore, she is still entitled to recover it. He states the question thus: "does the wife bind herself for her husband, or conjointly with him, for his debts, by selling her property for the consideration of having his debts taken up?" And taking it for granted that she does, he relies upon article 2412 of the Code, which incapacitates a wife from becoming security for her husband's debts; and 1784, which recognizes that incapacity and forbids contracts between the husband and wife. He relies also on the opinion of the late Supreme Court in the case of *Curry* v. *Brown et als.*, *Gasket* v. *Dimitry*, and other authorities to the same effect.

In the case of *Gasket* v. *Dimitry*, the wife renounced her rights upon property of her husband in favor of one to whom he was about to give a special mortgage. It was held, that notwithstanding her renunciation she might claim her rights in preference to the mortgagee. The decision occasioned general surprise, and, before it became final, the Legislature passed a law limiting the time within which a wife might attack her renunciation already made to forty days, and enabling wives in future to make valid renunciations of their rights upon the property of their husbands. But even that decision did not proceed so far, as that the wife might attack the forced sale under the mortgage, or recover the proceeds from the mortgagee, when realized by the sale of the mortgaged premises; though the presiding judge, in rendering the opinion, observed, that "the wife might validly sell or mortgage her property, but such contracts must be made for her own benefit, or for the mutual benefit of herself and husband, by which she calculates on gain. Yet, admitting these contracts to be completely binding on her, it does not follow as a corrollary that she could give her property in payment of the debts of her husband, without being able to rescind the contract." And another of the judges, in answer to an argument at the bar, that the wife might sell her paraphernal property, and nothing prevented her from paying a debt of her husband out of the proceeds, observed: "It is not so clear that in such a case she might not recover back from her husband's creditor, money paid under such circumstances; money which she did not owe, and which she could not validly promise to pay."

These principles were cited with approbation in the case of *Curry* v. *Brown*, 12 R. R. 82; and it was held in that and other cases, that in whatever form the wife might disguise her suretyship for her husband, she was not bound by the contract. The *Senatus Consultum Velleianum* of the Roman law was also cited, to show that the wife could recover back property sold by her to her husband's creditors in payment of his debts.

None of these authorities expressly embrace the present case, in which the wife sold property, not to her husband's creditors in discharge of his debts, but to one who was not his creditor, partly for cash and partly for an obligation to take up her husband's debts, and now seeks to recover, not the property, but to compel the purchaser to pay the price a second time. And, in deciding the case, we are unwilling to extend the incapacity of the wife to contract, with a view to aid her husband, beyond that which is declared in the code in the articles cited. She is incapable of binding herself as his surety, and will be relieved from all obligations to that effect.

COURTNEY
*v.*
DAVIDSON.

COURTNEY
*v.*
DAVIDSON.

But our code does not restrain her, with the authority of her husband, from alienating her paraphernal property; and when disposed of, imposes no restriction upon her use of the proceeds, more than of any other money belonging to her. The courts, therefore, can impose none; and perhaps the freedom of trade, good faith, and the true interests of society render it desirable that none should be imposed. It seems to me opposed to the real welfare of families, that the husband should be involved in and harrassed with honest debts, contracted perhaps in efforts to improve the condition of his family, with a wife rich in money, but rendered incapable by law of relieving him.

This view of the subject renders it unnecessary to examine the bills of exception with which the record is filled, nor the question whether or not the slaves were the paraphernal property of the plaintiff. She does not seek to annul the sale of the slaves, but to recover the price. The payments stipulated in the sale are proved to have been made, and she cannot recover them a second time.

The claim of the plaintiff for the hire of the other slaves during the time the defendant held them, is entirely untenable. She sold them to him, and he possessed them in good faith under her title until evicted by the suit. Though it terminated by a compromise, that can make no difference, since the legal question as to the right to the hire was expressly reserved. We know of no law or precedent for compelling an evicted vendee to pay his vendor damages, or, what is the same thing, compensation for the use of the property sold while he possessed it.

The judgment of the district court is therefore affirmed, with costs.

ROST, J. The objection of the want of capacity in the wife would present great difficulty, if this was an action to set aside the contract and recover the slaves. I incline to the opinion that she would have been entitled to recover in such an action. But he plaintiff, so far from resting her pretensions on the nullity of the contract, sues in affirmance of it, and seeks to recover under it the price of the slaves. The question therefore does not arise.

The validity of the contract being thus admitted, our inquiries must be limitted to the stipulations it contains; for it is clear, that although the plaintiff might have avoided it and recovered the slaves, she cannot alter it and compel the defendant to pay a consideration he did not promise.

It being satisfactorily shown, that the portion of the price claimed was to be paid in the debts of *William Kinchin*, nothing remains for us to do but to affirm the judgment.

Judgment affirmed, with costs.

SLIDELL, J. The plaintiff's action is based upon the judgment, by consent, in 1845; and so far as the evidence enables me to understand the relations and intentions of the parties, the plaintiff does not appear to me to have made out any right under that agreement to the relief claimed in her petition.

I concur, therefore, in the affirmance of the judgment.

EUSTIS, C. J. For these reasons I also concur.