## No. 1,323.

### MRS. VIRGINIA MORROW VS. LEOPOLD GOUDCHAUX ET ALS.

1. Notwithstanding the proof should show that a married woman signed an act of sale of her paraphernal property at the instance of, and through coercion exercised by her husband, antecedent to the sale, yet, if she subsequently perform acts evincing an acquiescence therein, she will be thereby concluded and debarred from asserting the nullity of the contract.

2. The code contains no prohibition against the wife's free use and disposition of the proceeds of a sale of her paraphernal property, and it specially provides that if her husband should receive and dispose of the proceeds of such sale, the wife shall have a tacit mortgage on his property.

APPEAL from the Twelfth District Court, Parish of Avoyelles.
*Coco*, J.

*Thorpe & Peterman* for Plaintiff and Appellant:

1. The prohibition of the code against a married woman binding herself for the debts of her husband or of the community is one affecting the public order and is directed against every form of contract by which such illegal purpose is sought to be consummated. 14 Ann. 169; 12 R. 84; 12 Ann. 852; 1 Ann. 429; 33 Ann. 666–1039.

2. "The circumstance of the wife having a separate advantage in the contract is of the essence of the obligation and must be proved by other evidence than proof of her having touched the money." She cannot be bound unless the consideration of her contract is shown to have enured to her separate benefit or was employed for her separate use in something which the husband was not bound to furnish her with. 7 N. S. 64; 5 Ann. 586–496. 4 Rob. 508; 29 Ann. 125.

3. A sale by a married woman of all her paraphernal property for a consideration made up wholly or in part of a past indebtedness for goods and supplies purporting to have been purchased by her during the existence of the community is a nullity. 34 Ann. 822.

4. Where a married woman not separated in property from her husband, sells all her paraphernal estate consisting of valuable plantations, to her husband's creditor for an expressed consideration of one-half cash and one-half notes, and it is shown that the cash was never paid to the wife but was credited by the purchaser on the debt due him by the husband; and that the husband took the notes and with them settled his indebtedness to third persons, the wife thereby being wholly deprived of every part of the consideration,

the sale is a mere scheme to appropriate the wife's property to the payment of the husband's debts and will be set aside.  2 Ann. 756; 5 Ann. 572; 34 Ann. 288–632.

5. Contracts of the wife which are entire and have an entire consideration, and which are violative of the provisions of the code. are null in their entirety,— they cannot be valid as to a part of the consideration and void as to the remainder.  1 Ann. 301; 23 Ann. 439; 28 Ann. 758

6. Undue marital influence in the execution of an act of sale is sufficiently shown by proof that the wife was illiterate, weak minded from infancy, addicted to the use of narcotics, and had been for years the victim of a drunken husband's tyranny, curses and violence and stood in dread of him, and that he was present when the bargain to sell was made and when she executed the act which was signed in his presence and hearing and at his bidding.  34 Ann. 288.

*Cullom & Cappel* and *K. Baillio* for Defendants and Appellees :

1. Good faith in contracts is always presumed, and the court will believe the parties understood each other.  13 L. 254; 23 Ann. 272.
2. Fraud is never presumed.  Hen., p. 487, No. 1, and cases cited.
3. Duress or violence cannot invalidate a contract as to a third innocent party without knowledge of such duress or violence.  C. C. 1858; 14 Ann. 15.  Especially where there was another motive for making the contract.  C. C. 1859; 27 Ann. 478.
4. Where a party demands the rescission of a sale, he must, as a condition precedent, return, or offer to return, the consideration he has received.  21 Ann. 425, 514, 4 La. 198; 19 La. 283; 2 R. 160; 6 R. 450.
5. Plaintiff must allege every fact material to his case.  *Stare Decisis.*
6. To annul a sale because of an unlawful assumpsit of the wife, the assumpsit must be specially alleged.
7. Parties cannot avail themselves of evidence clearly admissible under the pleadings to prove a distinct cause of action not alleged.  31 Ann. 862.
8. An assumpsit only takes place where there is a pre-existing debt.
9. A verbal order by A to B to give C credit, is an original contract and not an assumpsit.

The opinion of the Court was delivered by

WATKINS, J.   The object of this suit is the recovery from the defendant, Goudchaux, of a small tract of land situated in the Parish of Avoyelles.   Plaintiff alleges that it is part of her separate paraphernal property and estate, and the sale and conveyance of which to the said defendant was illegal and void, for two reasons, viz:

1. That it was without any valid and free consent on her part, her participation therein having been unwillingly obtained through compulsion and threats of violence exercised by her husband.

2. That no part of the price or consideration was paid to her, or enured to her benefit, but went to discharge debts of her husband.

The negative of these two propositions is maintained by the defendant.

A careful examination of the record has revealed the following facts substantially, viz :

On the 25th of April, 1878, the plaintiff executed in favor of the defendant a *vente à réméré* of a certain tract of land situated in the Parish of St. Landry, in the immediate vicinity of the land in suit, in which there was a stipulation that, upon the payment and restitution of the price of $550 on the 1st of January, 1879, she might exercise the right of redemption. Finding herself in a situation that rendered its exercise exceedingly impracticable, the former act was annulled on the 11th of December, 1878, and a new and different conveyance executed by the plaintiff to said defendant, absolute in character, for the stated price of $3000, of the land in suit, as well as that situated in St. Landry parish.

The consideration of this sale was stated to be in cash to the extent of $1500, and a like sum, on terms of credit of one, two and three years, for which Goudchaux executed three notes of $500 each, payable to the order of the plaintiff. There was $500 paid down on the day of sale, in currency, and the remainder was represented by the amount of $550 specified in the *vente à réméré*, and the amount of the defendant's store account which had been kept in the name of A. H. P. Walls, the plaintiff's husband.

At their respective maturities the defendants paid the three notes to the holder thereof, same having been duly endorsed by the plaintiff with the authorization of her husband. Within a few months after this sale, Walls and his wife and children removed permanently to the State of Kansas, where he deserted her soon after, and the plaintiff and her children were thrown upon the charities of her relations and the Free Masons, by whom she was supplied with means to return to Louisiana again, where she has ever since lived, in penury and want.

## I.

A careful scrutiny of all the evidence has satisfied us that there was no such force or coercion employed as to vitiate the contract of sale. The plaintiff and one of her witnesses testify to the effect that her husband was a drinking man, and, when under the influence of alcohol, was quite abusive and insulting to the former. And they stoutly maintain that, on the day of the sale, she was threatened with violence, if she did not sign the act of sale.

*Per contra*, the defendant and one of his witnesses swear that the plaintiff solicited him to purchase the property, and called upon him, and interviewed him on that subject. The notary, and at least one witness state that the plaintiff accepted the $500, in cash, paid at the time the act was executed, and received the notes.

It is in proof that she endorsed the notes in blank, and thus made

them payable to bearer. These occurrences happened on the day subsequent to plaintiffs interview with the defendant and at a time when no force was employed to superinduce them.

There was one witness who testified that he was personally and well acquainted with the plaintiff and her husband, and said : " From what I know of them I do not think that Mrs. Walls could have been coerced by her husband in doing any act she did not want to do. I considered her the controlling power of the partnership. I mean by this last remark to say *that she could and did control Walls, and that Walls could not control her.*"

This witness, Wm. M. Ewell, seems to have been a wholly disinterested person in all these transactions. His testimony is supported by like statements made by other witnesses.

Taken all in all, the proof is clear that the sale was freely and voluntarily made on the part of the plaintiff, or if it was not, that her acts of acquiescence in it, and acceptance of its fruits, are quite sufficient to debar her from making claim for its annulment on that score.

## II.

It must be borne in mind, in considering the second ground of nullity charged against the sale under consideration, that this suit only has for object the recovery of the tract of land situated in the Parish of Avoyelles; and, that if the act of sale in question be annulled for the causes, or either of the causes assigned, the *vente à réméré* of the tract of land situated in St. Landry parish would of necessity revive and remain undisburbed, as *it* is the act assaulted which annuls that contract, and its revocation would, of course, revive it, as there is no attack made upon it in the plaintiff's petition.

This *vente à réméré* has the corresponding effect of validating the consideration to the extent of $550, the amount of the price, or consideration therein specified.

As before shown, there was $500 paid down in cash on the day of sale, and the three purchase notes of $500 each were executed by the defendant, payable to the order of the plaintiff, and they were delivered to the plaintiff on the day of sale; and her further and *subsequent* act of endorsement of them was necessary in order to enable any third person to collect them.

When these notes came to their respective maturities, they were paid by Goudchaux.

Thus it is obvious that $2550 of the consideration for this sale was received, and safely reached the destination the plaintiff intended. With

Morrow vs. Goudchaux et als.

regard to the remaining $450 of the price, Goudchaux says he retained it in his hands, at the express instance and request of the plaintiff, and that same was expended as she directed and upon her orders.   He says Mr. Walls was a wholly impecunious person and without means, or credit, and Mrs. Walls gave him instructions to let him have what he wanted.

There was an account on defendant's books in the name of the husband, which had been running for years, and which had been annually increased by debts, and correspondingly reduced by sundry credits, until the 25th of April, 1878 — the date on which the *vente à rémeré* was executed — when the books disclosed a debit balance of $200 against him.   It is at this date the account of Walls was closed, and the dealings of defendant with the plaintiff commenced.   He explains that it was thought to be more convenient that the account on the books should be continued as it was, and without change, and so it was done, and all purchases thereafter made in his store were on the plaintiff's account, though they appear on her husband's account, just as before. While this explanation does not appear quite satisfactory, and may be open to doubt, and regarded as an expedient resorted to for the purpose of giving the appearance of fairness and legality to a reprobated transaction, yet we are not prepared to say that it comes within the prohibition of the Civil Code.

It provides that " the wife, whether separated in property by contract or judgment, or not separated, cannot, except by and with the authorization of the husband, and in default of the husband, with that of the judge, alienate her immovable effects of whatever nature they may be, except in cases where the alienation of the dotal immovable is permitted."   R. C. C. 2397.

" The wife, whether separated in property by contract or judgment, or not separated, cannot bind herself for her husband, nor conjointly with him, for *debts* contracted by him, before or during marriage."   R. C. C. 2398.

These articles have given rise to much discussion by commentators, and jurists, resulting in quite a contrariety of opinion as to their true import in respect to a wife's alienation of her paraphernal property.

The decisions of this court have been, in some cases, pushed to the extremity of announcing that the two articles quoted, constituting, as they do, a separate chapter in the code, which is entitled " *Of the wife's incapacity to alienate her immovables, or bind herself for her husband,*" the provisions of either may be considered as interpreting the other, and the prohibition contained in one as exercising control, in some sort, over

the other. Hence it has been said that the provisions of the latter article, which declare that "the wife * * cannot bind herself for her husband, nor conjointly with him, for debts contracted by him" apply to the alienation of a wife's paraphernal immovables, and prohibits her from receiving in partial payment of the purchase price, an indebtedness of her husband to the vendee. R. C. C. 2398.

With due deference to the decisions on this subject, we cannot subscribe to that theory.

Article 2397 simply provides that the "wife * * * cannot, except by and with the authorization of the husband, and in default of the husband, with that of the judge, alienate her immovable effects, of whatever nature they may be," etc.

Nothing is said in regard to the consideration for this sale, nor as to the destination of the proceeds. There is no prohibition contained in this article in this particular. The next one refers solely and alone to obligations the wife is forbidden to contract. The two are entirely independent, one of the other, notwithstanding they embrace kindred subjects; and neither exercises any control over the other.

After making a careful examination of the whole jurisprudence, we find no decision which so tersely expresses our views on this question as that in Courtney vs. Davidson, 6 Ann. 455. It is as follows, viz:

"But the code does not restrain her, with the authority of her husband, from alienating her paraphernal property; and when disposed of, imposes no restriction upon her use of the proceeds, more than of any other money belonging to her. The courts, therefore, can impose none; and perhaps, the freedom of trade, good faith, and the true interests of society render it desirable that none should be imposed. It seems to be opposed to the real welfare of families that the husband should be involved in, and harassed with honest debts, contracted, perhaps, in efforts to improve the condition of his family, with a wife rich in money, but rendered incapable, by law, of relieving him."

Applying that principle to the facts of this case, and we can see neither good legal objection or impropriety in the plaintiff leaving a part of the purchase price in the custody and possession of the purchaser of her paraphernal property, who was merchant, on the faith of which she might draw subsistence for herself and family, subsequently.

Especially is this true "if all the property of the wife be paraphernal and she have reserved to herself the administration of it," for, in this instance, says the code, "she ought to bear a proportion of the marriage charges, equal, if need be, to one-half her income." R. C. C. 2389.

But the code is even more explicit, for it says in express terms that

"the wife may alienate her paraphernal property with the authorization of the husband; * * * * * but should it be proved that the husband has received the amount of the paraphernal property *thus* alienated by his wife, or otherwise disposed of the same for his individual interest, the wife shall have a legal mortgage on all the property of her husband for the reimbursement of the same." R. C. C. 2390.

We are of the opinion that the second ground of plaintiff's charge against her sale to the defendant, must share the same fate of her first one. The defendant's title is valid, and the judge *a quo* correctly upheld and sustained it.

Judgment affirmed.