Statement of the Case.
MONROE, J.
Plaintiff alleges that in May, 1895, her husband applied to the defendant to borrow money, which the defendant agreed to lend, provided she (plaintiff) would secure the loan; that she accordingly agreed to give a mortgage upon certain real estate owned by her in and near Shreveport; that, when she went to execute the mortgage, the defendant, knowing that the money was to be obtained for her husband’s use, suggested that the. transaction be put in the form of a sale, with a counter letter, and that it was so done. She further alleges that said real estate was then worth $0,000; that the defendant has since sold a portion of • it, and is offering to sell the rest, and that he claims to be the owner thereof, but that, if he regarded the transaction referred to as other than a mortgage, it was a fraud upon her rights; and she prays that it be recognized to be a mortgage or pignorative contract.
The defendant answers that he bought the property in question upon May 18, 1895, in good faith, for a valuable consideration, and has been in possession ever since; that the plaintiff failed to redeem it within the year agreed on; and that he has paid taxes and other expenses, which he specifies.
It appears from the record that in May, 1895, John Caldwell, plaintiff’s husband, applied to the defendant to borrow money, and offered as security the real estate in question, belonging to his wife. So far there is no dispute, and, as to what subsequently took place, up to the closing of the transaction out of which this suit arises, there is no other direct testimony than that of Caldwell, who represented his wife, and the defendant, -who acted for himself. Caldwell gives such testimony as the following:
“I went and talked to Mr. Trezevant about the loan, and he 'said that he had the money, and I made arrangements for the loan. He went and had the papers drawn up in the form of a sale, and I objected to the sale, and he gave me a letter of reconveyance, redeemable in twelve months, and told me that— Well, in fact, I thought myself that it was just the same as a mortgage. I never consulted any attorney about it, and the letter of reconveyance convinced me that it was just the same as a mortgage. Q. What did he say in regard to it? What did he say in reply? A. He said the same thing. He said, ‘John, you can redeem it in twelve months.’ * * * Q. Did he not tell you, at the time of these negotiations that you have been speaking of, that he would not lend you a dollar on that property; that it belonged to your wife. A. Well he may have, naturally. The property was in my wife’s name. He could not lend me the money on the property. I had no security. The security was given by my wife. * * *
“Did he not tell you that he would not lend any money on the property at that time? I will ask you what he said to you at that time. A. I don’t know what he sail. I know I got the money on the property.”
Mrs. Caldwell testifies that she had no conversation with the defendant concerning the business at any time, but that the entire negotiation was conducted by her husband, who had her full authority. The proposition upon which this suit is based, therefore, is that the defendant loaned money to Mr. Caldwell, for the use of that gentleman, upon the security of his wife’s property, which means that he loaned it without any security at all. And the foregoing excerpt is about the strongest, and only, testimony which is offered in support of that proposition. The defendant," on the other hand, testifies that he declined to make any loan whatever; that he told Caldwell that he would buy the property from his wife; that he did not suggest that the sale, as made, was merely a mortgage; that he bought the property in good faith; that he did not suggest that the transaction be put in the form of a sale, but that it was specifically agreed that it should be a bona fide sale, and that he would have consented to nothing else; that he did not know whether Caldwell wanted the money for himself or not; that he wrote to Mrs. Caldwell, or her representa *413 tive, in due time, that the year was about to expire, that she must avail herself of the right to redeem, received a reply from Caldwell, and thereafter heard nothing from either of them until the citation was served in this suit.
A perfectly formal act of sale was executed, whereby the property was conveyed to the defendant for $2,860 cash, the receipt of which was duly acknowledged. The defendant executed a counter letter, agreeing to re-convey the property to his vendor within a year upon the payment to him of $2,860, together with any taxes which he might pay in the meantime; and the sale and letter were recorded, the one on the day of its date, and the other on the 25th of July following. The payment was made in two checks, both payable to the order of the vendor, for $2,600 and $260, respectively; the former representing the real price, and the latter, indorsed and returned to the vendee, representing his profit in the event of the redemption of the property. Immediately thereafter Caldwell left Shreveport, and went to El Paso, Tex., whither his wife followed him a few months later, and where they have made their home since that time. Towards the end of the year the defendant wrote, reminding them of the approaching expiration of the period of redemption. Caldwell seems to have said in reply, as he says in his testimony, that they were unable to redeem. And so far as the defendant was concerned, nothing more was heard of the matter until this suit was brought, more than six years afterwards. In the meanwhile, shortly after the expiration of the year of redemption (i. e., in the summer or autumn of 1896), the defendant paid-a mortgage debt of Caldwell’s, amounting to $2,320, which was bearing upon the property when he acquired it, and which was coiitracted as follows; In 1892 Caldwell had made a dation en paiement to his wife of property, movable and immovable, including that herein claimed. The immovable property was then burdened, or appeared to be burdened, with two mortgages which had previously been given by the donor to secure his two notes, of $5,000, each, held by the Merchants’ & Farmers’ Bank as collateral security for any debt then due by him or which he might thereafter contract, which notes and mortgages were allowed to remain undisturbed quoad the property in dispute after its transfer to Mrs. Caldwell; and thereafter, upon that security, Caldwell contracted the debt which the defendant paid, and which, though it turned out to be $2,320, was spoken of by Caldwell, during his negotiations with the defendant, as a valid, subsisting obligation bearing on the property, and amounting to, perhaps, $2,500. During the years following the transaction here attacked, the defendant was in actual possession of the property claimed, paid the taxes thereon, and collected the rents, amounting to about $20 a month.
The plaintiff and her husband in the meanwhile (that is to say, in 1897) joined in the execution of two notarial acts, the one to J. P. Flournoy, and the other to W. J. Alexander, wherein they declared that they sold to the parties named their interest in any and all real estate belonging to them in Shreveport or in the parish of Caddo, with a certain exception, which did not include the parcels here in question. The evidence shows that the value of those parcels in 1895 is over, rather than under, stated by the plaintiff at $6,000.
Opinion.
A married woman may, with the authorization of her husband, sell her paraphernal property, and make such disposition of the proceeds as she thinks proper. The law contemplates that she may turn them over to her husband, and provides a method by which she may secure herself in so doing, and it cannot affect the validity of the sale that she announces such purpose in advance. Civ. Code, arts. 2390, 2397; Courtney v. Davidson, 6 La. Ann. 455; Morrow v. Goudchaux, 41 La. Ann. 715, 6 South. 563; Lester v. Sheriff et al., 46 La. Ann. 344, 15 South. 4; Colgin v. Courrege, 106 La. 684, 31 South. 144. The rule thus stated is modified by judicial interpretation of those provisions of the law which deprive the wife of the capacity to bind herself or her property for the debts of her husband, agreeably to which interpretation it is held that transactions having that purpose in view cannot be sustained as between the parties thereto, no matter what may be their form; that, in attacking them, the wife is not estopped by *415 her own admissions or conduct, and, in cases of authentic acts, is not confined to counter letters, or interrogatories on facts and articles, but may resort to parol evidence. Civ. Code, arts. 126-128, 2398; McIntosh v. Smith, 2 La. Ann. 756; Bisland v. Provosty, 14 La. Ann. 169; Chaffe, Bro. & Son v. Olivier, 33 La. Ann. 1010; Harang v. Blanc, 34 La. Ann. 632; Vicknair v. Trosclair, 45 La. Ann. 373, 12 South. 486; Lester v. Sheriff et al., 46 La. Ann. 343, 15 South. 4.
The plaintiff in this case does not allege that the money obtained from the defendant was to be used, or that it was used, to pay the debts of her husband; nor do we think tliat'the evidence justifies the conclusion that it was intended to be or was used in that way; still less, that the defendant was so informed. The check given by the defendant, it will be remembered, was made payable to the order of the plaintiff, by whom, therefore, it must have been indorsed, since there is no question as to the obtention of the money; and, as it appears, it was turned over to her husband, who, because he was shown to have been acting as the agent of his wife, was allowed to testify. Being asked what he did with the money, his reply was: “I put it to my credit at Goldstein, Rose & Co. on the 20th day of May. I owed them some money in a settlement, and I paid some taxes, and she owed some debts.” He was then asked, “This money that you put in Goldstein, Rose & Co., was it for your individual debt?” to which he replied, “I think so.” The fact, however, is that on May 25th following the receipt of the money, on May 18th, Caldwell was settled in El Paso, Tex., where he established himself in business, and has remained up to the present time; and, as the evidence shows that he was considered insolvent when he left Shreveport, it seems likely that, with the exception, perhaps, of some inconsiderable amount, he took the money with him, and used it for the purposes of his new departure in business. However that may be, there is nothing to indicate that the defendant knew or had any reason to suspect that the payment of Caldwell’s debts was in contemplation, and, as the petition herein filed contains no such allegation, so thlere is no prayer for relief on that ground, and no attempt to relieve the property in controversy from liability for the money obtained; the prayer of the petition being that the putative sale be decreed to be “a mere mortgage or pignorative contract.”
Whether this prayer be considered with reference to plaintiff’s status as a married woman or otherwise, the result is the same.
Conceding all that she asks (i. e., that she be allowed to show by parol evidence that she intended to execute a mortgage, and believed that she had done so), the fact remains that she was represented in the matter by her husband, who admits that the defendant refused to loan money on or deal with the property otherwise than as a purchaser, and that he (Caldwell) thought that the sale, with the counter letter, was just the same as a mortgage—a belief not justified by the fact, and for which the defendant was in no wise responsible. Beyond this, considering that the property was then worth scant $6,000, and that it was incumbered with a mortgage, which was believed to be, and probably was, valid, for some $2,300, it cannot be said that $2,600,, cash was a vile price; and as the purchaser took, and has continued ever since in, possession, and has paid off the mortgage, there is absolutely nothing to show that, so far as he is concerned, the transaction was not what it pm-ported to be, or that, if the plaintiff believed it to be other than a sale, there was any one to blame but her agent and herself.
She therefore fails to make out her case. Howe v. Powell, 40 La. Ann. 307, 4 South. 450; Marbury v. Colbert, 105 La. 467, 29 South. 871; Bagley v. Bourque, 107 La. 395, 31 South. 860.
The judgment appealed from is accordingly affirmed.
LAND, J., recused.