Statement of the Case.
MONROE, J.
Plaintiff seeks to compel defendant to accept title to certain real estate, in accordance with a written agreement between them. The defense is that the title tendered is bad, or, if not bad, suggestive of litigation. This defense is founded on the following facts, to wit: The property was acquired on May 6, 1S97, by Mrs. Theresa Blaise, wife of George Digby, by an act which recites that the purchase is made with her paraphernal funds. On January 14,1898, Mrs. Digby, duly authorized by her husband, executed an act purporting to be a sale of the property, to Patrick I-I. Golden for $1,SOO cash, and on the same day and before the same notary another act, purporting to be a sale, was executed, whereby Golden reconveyed the property to Mrs. Digby for $1,900, of which $700 is said to have been paid in cash, and for the balance of $1,200 Mrs. Dig-by gave her note, secured by mortgage. In June, 1901, Robert Legier, agent, as the holder of the note so given, caused executory process to issue thereon, under which the property was adjudicated to plaintiff herein for $1,310 cash; the usual notices having been served on the defendant in the writ. In December, 1901, Legier, agent, brought suit against Mrs. Digby, claiming a balance due on the note in question, over and above the amount realized by the sale, of $1,038.23, to which Mrs. Digby answered that the transactions out of which the note originated were fraudulent devices whereby she was deprived of her property in order to borrow money for her husband, who received and'used the same, and she prayed that the suit be dismissed and that her right to attack the sale of the property be reserved. No further proceedings have since been taken in said suit. We find no suggestion in the record that the plaintiff herein knew of any fraud or illegality connected with the issuance of the note, to enforce the payment of which the property was sold by the sheriff. It is admitted that Mrs. Digby is still residing with her husband in New Orleans.
Opinion.
A married woman, administering her paraphernal estate, may, with the authorization of her husband, sell her paraphernal property, and, with the same authority, repurchase it, or buy other property, and bind herself by giving a note for the price. It is true that, as between the parties to the transaction, a sale and resale upon the same day may be shown to have been intended as a mortgage, or it may be shown, as is suggested here, that the transactions were fraudulent devices intended to accomplish the sacrifice of the property of the wife for- the benefit of the husband; but,' in order to make out a ease upon either ground, the attacking party must produce evidence aliunde the record, must show the real nature of the transaction, and must bring home to the party attacked knowledge thereof, or at least prove that the situation was such as to authorize the presumption that he possessed such knowledge. Thus, in the case of Layman v. Vicknair, 47 La. Ann. 679, 17 South. *281 265, a simulated sale of the property of the wife (Mrs. Lasseigne) was made to Naquin, who upon the same day conveyed the title to the husband, who conveyed it to Troselair, who gave notes, secured by mortgage, as in payment of the price, which notes were immediately turned over to Roger, in satisfaction of a debt due him by Lasseigne, and were thereafter pledged by Roger to Layman, who sued on them. Mrs. Lasseigne resisted the demand, and as part of her defense showed that the act of sale and mortgage from her husband to Troselair, by which the notes sued on were secured, contained the recital (erroneous it is true) that her husband had acquired the property from the heirs -of her parents, she being one of them, from which circumstance, and others, the court concluded that Layman should have been put on his guard.
In Talbert v. Securities Company, 49 La. Ann. 1393, 22 South. 762, the wife was induced by marital coercion, and by the persuasion of the agent of the lender of the money, to authorize the cancellation of her mortgage on certain property owned by the husband in order that he might borrow money, for his own use, upon a mortgage given by him. When the attempt was made to enforce the mortgage so given, the wife intervened and asserted her rights, and the court found that she had not released her mortgage in the manner provided by law, and that the plaintiff in the case was aware of that fact. In Terry v. Gilkeson, 50 La. Ann. 1040, 24 South. 128, defendant obtained an order for the seizure and sale of a plantation which had belonged to plaintiff, and of which there had been a pretended sale and resale, the object of which was to secure a debt due by her husband to the de cujus of the defendant. Plaintiff enjoined the seizure, proved the facts, and the injunction was maintained.
In Douglass v. Douglass, 51 La. Ann. 1455, 26 South. 546, there was a simulated sale by the wife to a person interposed, who conveyed the property to the husband on the same day, and it was held, in a suit brought by the wife herself, that the transaction was a fraudulent simulation, which could not be sustained, as against the wife, for the enforcement of a judicial mortgage in favor of a creditor of one of the heirs of the husband.
In Acker v. Bourgeois, decided by the Court of Appeal for the Parish of Orleans and reported in 5 C. A. 270, it appeared that plaintiff had caused executory process to issue on a mortgage note executed by defendant, and that the latter enjoined, and showed that she had made a simulated sale of her property, and within the hour had (apparently) repurchased it, by act before the same notary; “that said pretended sale and resale, to the knowledge of plaintiff, were intended to effect a mortgage on her separate property; that the note secured by said mortgage was to be immediately taken up by plaintiff, and the cash obtained therefor was to be used in paying the debts of defendant’s husband.” And it was held that, being a mortgage, to the knowledge of the plaintiff, the latter was bound to show that the proceeds inured to the benefit of the mortgagor, since she was a married woman, and had no other authority for contracting the loan than that of her husband, for whose benefit, in fact, she had borrowed the money. It is true that the judge a quo said (and the Court of Appeal adopted his opinion) that the pretended sale and resale “conveyed on their face full notice to the world that they were nothing more than a disguised mortgage by Mrs. Bourgeois, of her separate property, with the sole authorization of her husband, and without authorization of the court”; but it was sufficient, for the purposes of the case, that the sale and resale were intended to operate as a mortgage to the knowledge of the person who loaned the money and was seek *283 ing to enforce payment, and we are inclined to think that our learned Brethren may have gone a little further than was intended in saying that the sale and resale, executed on the same day, “conveyed, on their face, full notice to the world that they were nothing more than a disguised mortgage.” Any one sui juris may lawfully sell his property when lie pleases, and buy it back when he pleases; and the same thing is true with respect to a married woman, administering her paraphernal estate, save that she must be authorized by her husband, or the judge. As between married women and homestead associations, the law expressly declares that the former may become stockholders in the latter, without the consent of their husbands, and that a sale and resale of property between such an association and a stockholder, or other person, “shall not be considered or dealt with as a loan, but as a purchase, * * * and then a sale.” As between a married woman, authorized by her husband, dealing with her paraphernal property, and transacting with another individual, we should not feel justified in assuming, merely from the face of the papers, that a sale and resale were intended to be other than they purported to be. Fraud, subterfuge, and evasion are not to be presumed. Nor do we think that a court of original jurisdiction would be authorized, upon such assumption, to refuse to make an order for executory process upon a note given by a married woman in the repurchase of property which had been sold by her on the same day, or within the same hour, and before the same notary. Upon the face of the papers, such transactions are legal, and they must be accepted for what they purport to be, until shown to be otherwise, though, no doubt, when attacked, they may, with the aid of other facts, be found to have the effect of mortgages. And, if that view be correct, and an order of seizure and sale may legally issue in such case, how can it be said that the sale, made thereunder to an innocent purchaser, is illegal and conveys no title, particularly where, as in this case, the party interested, though fully notified, interposes no objection to such sale, and thereafter for years, though continuing to live in the parish, makes no attempt to recover the property. There was, in this case, an interval of more than three years from the sale and resale between Mrs. Digby and Patrick Golden to the issuance of the executory process on the note given by Mrs. Digby, and nearly nine years have elapsed since the sale of the property to plaintiff. In the proceeding in which the sale last mentioned was made, Mrs. Digby was served, personally, with notice of demand for payment of the note and notice of seizure of the property, and she evinced no interest in the matter. The property was adjudicated, after the usual advertisement, to the plaintiff, who paid the price in cash, went into possession, and has remained in póssession (as we understand the record) from July 11, 1901, up to the present time, without complaint or disturbance from any one. In September, 1908, he entered into a written agreement with defendant, whereby the latter was to buy the property for $2,300 cash, and it appears to have been only when defendant’s diligent counsel examined the title that he learned that there was any supposed trouble about it. Our conclusion is that the trouble is not sufficiently deep seated to warrant the rejection of the title. We think that the papers presented to the judge a quo justified the order for executory process under which the property was sold by the sheriff; that the order (or quasi judgment) made by a court of competent jurisdiction (in the absence of any opposition by the person against whom it was directed, and who was duly notified thereof), justified the sale; that, the. order and sale being legal, the title resulting therefrom is, necessarily, legal; that the defendant in the seizure, being present in the parish when the *285 property was sold, and having been notified that the sale was to take place, and having interposed no objection, and having made no objection during the seven or more years which elapsed prior to the institution of this suit, could not now be heard to complain.
In Zunts v. Comen, 10 La. Ann. 433, it appeared that executory process had issued upon mortgage notes given by a married woman (acting only under the authority of her husband, and before the passage of the act of 1855 authorizing married women to contract debts and create authentic proof against themselves, etc.), and that she intervened in the proceeding and set up that the notes were not binding on her, because she was a married woman, but did not allege that they were given for the debts of her husband, made no affidavit, and asked for no injunction. It was held that (quoting the syllabus):
“The incapacity of a married woman to contract is not absolute. The married woman who signs a note and executes an authentic act of mortgage, with the authority of her husband to receive payment, cannot arrest an order of seizure and sale simply on the ground that she is a married woman. Nor can she arrest such an order upon a mere suggestion of want of lawful consideration for the notes, without affidavit. Where the authentic act bears intrinsic evidence that the wife has exceeded her powers, the judge should not issue an order of seizure and sale; but, where they do not bear such evidence, the order should be issued, and the wife left to her remedy, like other defendants in executory process, by injunction, on affidavit.”
In the course of a concurring opinion in the case, Mr. Justice Spofford, considering the objection that a writ of seizure and sale could not lawfully have been issued upon the authentic documents produced by the plaintiff, said that, whilst the wife could not bind herself for her husband or conjointly with him, it appeared, from the documents in question, that, duly authorized by her husband, she had confessed judgment for a debt, apparently her own, and he proceeds:
“Must the judge, in such case, without any evidence before him but the authentic act, on which there appears no single circumstance of suspicion, presume that it contains a latent fraud upon the law? Has fraud become so common as to be the rule, instead of the exception, and to impose upon our district judges the necessity, in all cases, of exempting the property of married women from the executory process? I think not. At any rate, no adjudicated case has said so. * * * The true doctrine is that, where the authentic acts bear intrinsic evidence that the wife has exceeded her powers, the judge should not issue an order of seizure and sale; but, where they do not bear such evidence, the order should be issued and the wife left to her remedy, like other defendants,” etc.
It is true that, in the case of Calhoun v. Bank, 30 La. Ann. 777, the present writer (who had been called into the ease from the district, court) expressed a doubt (which was not concurred in by any other member of the court) as to whether, since the passage of the act of 1855 (Civ. Code, arts. 126, 127, 128), which prescribes a particular method by which married women may create authentic proof against themselves, such proof could be created in any other way; but the now established doctrine upon that subject is that a married woman may mortgage her property by act importing confession of judgment for debts other than those of her husband, with the authority of her husband, given with or without that of the judge, the method provided by the act of 1855 being regarded as cumulative and not exclusive, and the difference being that, where she acts without the authority of the judge, and raises the issue, the burden rests upon the creditor to show that the debt inured to her benefit; whereas, in the other case, the authentic act furnishes full proof against her. Darling v. Lehman, Abraham & Co., 35 La. Ann. 1186; Hollingsworth v. Spanier, 32 La. Ann. 203; Berwick v. Sheriff, 49 La. Ann. 229, 21 South. 692. The proposition that Mrs. Digby 'could not now, and under the circumstances stated, be heard to attack the title tendered by plaintiff finds support in the following, among other, decisions, to wit: Henry v. Gauthreaux, 32 La. Ann. 1103; Chaffe & Sons v. Watts, 37 La. Ann. 324; Broussard v. Broussard, 45 La. *287 Ann. 1085, 13 South. 699; Lester v. Connelly, 46 La. Ann. 340, 15 South. 4; Thompson v. Whitbeck, 47 La. Ann. 49, 16 South. 570; Dreyfous v. Childs et al., 48 La. Ann. 872, 19 South. 929; Colgin v. Courrege, 106 La. 684, 31 South. 144; Caldwell v. Trezevant, 111 La. 410, 35 South. 619; Bordelon v. Gumbel, 118 La. 645, 43 South. 264.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be íáet aside and annulled, and that there now be judgment in favor of plaintiff, condemning the defendant to accept the title tendered and to pay $2,300 as the agreed price of the property, with legal interest from September 26, 1908. -It is further decreed that defendant pay all costs.