————o————

No. 5732.

## UNITED STATES SAFE DEPOSIT & SAVINGS BANK vs. WILLIAM J. BARRETT.

### Syllabus.

1. An authentic act of sale of real property, duly registered in the Conveyance Office, wherein the purchaser, acknowledging possession, grants the right to redeem within a specified time upon the repayment of the price with interest from the date of sale, is on its face, under our jurisprudence, a valid sale with right of redemption, and not a mortgage, pledge or other pignorative contract.

2. Where an authentic act constituting on its face a valid sale with right of redemption is duly placed of record as such and the delay for redemption has passed without there being any evidence of record showing that the right of redemption has been exercised within the delay fixed or has been renewed or extended, a third person who has acted upon the faith of the record will be protected from an attack on the title by the apparent vendor (in the sale with right of redemption) on the ground that the act in question was in reality only an act of mortgage or other security securing a specific debt to the apparent vendee.

3. A third person, relying upon the record, is not put upon inquiry by knowledge of the fact alone that the husband is

purchasing property which belonged to the wife several years before.

4. Positive proof and not mere inference is required to overcome the effect of the recitals of recorded authentic acts upon the truth of which third persons have a right to rely.

Appeal from the Civil District Court, Parish of Orleans, Division "D," No. 96, 334, Hon. Porter Parker, Judge.

Denegre & Blair, H. H. Chaffe, for plaintiff and appellee.

Parkerson & Robinson, for defendant and appellant.

His Honor, EMILE GODCHAUX, rendered the opinion and decree of the Court as follows:

On June 20th, 1900, Mrs. Barrett, wife of the defendant, W. J. Barrett, with the authorization of her husband, executed an authentic act in regular form purporting to sell for $2000.00 cash the real estate in question, being her separate and paraphernal property, to Catherine Augey who acknowledged delivery and possession thereof, with reservation of the right to redeem within three years upon payment of the price aforesaid with interest thereon from date of sale; and this act was duly placed of record.

In June, 1906, when the title still stood in the name of Catherine Augey and after six years had elapsed without there being of record any evidence indicating that the three year right of redemption had been exercised, extended or renewed, W. J. Barrett, the defendant and the husband of the aforesaid Mrs. Barrett, applied to the plaintiff bank for a loan to enable him to purchase the property in question, namely, the sum of $5,288. The bank having commissioned a real estate agent to appraise the property, who reported it was worth $6000.00,

and having had the title examined by its attorney, who reported it valid, agreed to make the loan, provided Barrett would furnish additional security to compensate for the slight margin existing between the amount of the loan demanded and the reported value of the property.

The transaction was accordingly consummated on June 27, 1906, in the form of a credit sale by Catherine Augey to W. J. Barrett, the price being represented by his mortgage note for $5288, which the bank received at the time in exchange of its two checks aggregating a like amount; and on the same day Barrett executed in favor of the bank, as additional security to the note aforesaid, an act of pledge of certain mules, wagons, floats, etc., employed in the drayage business in which he was engaged.

Subsequently, by sundry payments, Barrett had reduced the debt or loan to $2,831.00, when on the 11th day of November, 1909, he secured an additional loan of $1000.00 from the bank, which he secured by a second mortgage upon the property in question.

In March, 1911, the note of $1000 not having been paid, the bank instituted thereon the present proceeding by executory process; and the property having been seized, the aforesaid Mrs. Barrett thereupon applied for and secured an injunction arresting the seizure and sale on the ground substantially that the purported act of sale with right of redemption of June 20, 1900, executed by her in favor of Catherine Augey was intended to be and was in fact but an act of mortgage or security which neither divested her of title nor vested title in Catherine Augey; and that consequently the latter was without authority or right to dispose of the property to the husband, W. J. Barrett, who in turn could make no valid purchase thereof nor thereafter grant any valid mortgage thereon to secure the said note of $1000 or otherwise.

The plaintiff bank, defendant in injunction, moved to dissolve the injunction, but this motion, by agreement of the parties, was submitted with the merits and there was judgment dismissing Mrs. Barrett's proceeding and dissolving the injunction with $250 attorney's fees and all costs. From this judgment she appeals.

Before proceeding further with a consideration of the transcript, it is pertinent to now determine these questions:

## I.

Does the authentic act of June 20th, 1900, wherein Mrs. Barrett purports to sell the property to Catherine Augey, with reservation of the right of redemption, evidence on its face a valid sale with right of redemption, or, on the contrary, a mere mortgage, pledge or other contract of security?

It is not pretended that the act in question does not embody all the essential elements of a valid sale with right of redemption, for it discloses a divestiture of title on the part of the vendor for a fixed price acknowledged by her to have been received; an acceptance of the act and an acknowledgment of delivery and possession of the property on the part of the vendee, and an agreement reserving to the vendor the right to redeem upon repayment of the price within a fixed period.

The only incident relied upon as depriving the instrument of its effect as a sale, is the recital therein that the vendor, in order to exercise the right of redemption, is required to repay not only the purchase price, but also **six per cent interest thereon from the date of the act.**

It is true that the Code defines a sale with right of redemption as an agreement whereby "the vendor reserves to himself the power of taking back the thing sold by restoring **the price paid for it,**" **R. C. C., 2567;** but it is

equally true that in applying this provision, the Courts, in harmony with what appears to be the prevailing opinion in France upon the subject, have held that the limitation for the return of the price alone is not sacramental, and that the vendor may provide that the right to redeem shall be conditioned upon the payment of a larger sum than what he received for the property.

Soulie .vs. Ranson, 29 An., 168.

We find from a somewhat limited examination of the cases, that in conformity with this principle, sales with right of redemption have been upheld as such, which on their face prescribed that the vendor, in addition to the price received, should pay a bonus or profit to the vendee, or should reimburse the vendee for the outlays made by him during the redemption period for taxes, or for the impovement of the property or for its preservation and that though, as in this case, the vendor be required to return the price with interest, the cases hold that the transaction is none the less a valid sale with right of redemption.

Jackson vs. Lemle, 35 An., 855; Caldwell vs. Trezevant, 111 La., 410; Bonnetle vs. Wise, 111 La., 855; Seckinger vs. Cheneville, 125 La., 278; Levy vs. Ward, 32 An., 784.

We take it, therefore, as established under the jurisprudence that the transaction of June 20, 1900, between Mrs. Barrett and Catherine Augey evidenced on its face a valid sale with right of redemption; and this brings us to a consideration of a second question.

## II.

Being on its face a valid sale with right of redemption and there being of record no evidence showing that the right of redemption has been exercised, renewed or

extended, will not a third person, such as the bank in this case, acting upon the face of the record, be protected from an attack on the title by the apparent vendor on the ground that the act in question is in reality merely a mortgage or other contract to secure a specific debt to the apparent vendee?

This precise question was elaborately considered and resolved in the affirmative in a recent case. Though the organ of the Court announced its conviction, from a consideration of the facts disclosed dehors the face of the instrument itself and of the conveyance records, that the act "was not what it purported to be (a sale with right of redemption), but was intended to evidence a security for a specific debt," the Court nevertheless held (quoting from the syllabus):

> "Where an act purporting to be a sale with right of redemption is placed of record, and the delay for redemption has passed without there being any evidence of record showing that the right of redemption has been exercised within the delay fixed, a person who has bought the property from the apparent vendee (in the sale with right of redemption) on the faith of the record, will be protected in his purchase from an attack on his title by the apparent vendor on the ground that the act purporting to be an act of sale with right of redemption was in reality only an act of mortgage securing a specific debt to the apparent vendee.'
>
> **Jolivet vs. Chaves, 125 La., 923.**

It is true that the bank here is the purchaser or holder of the notes and not of the property, but the law regards its relationship to the transaction in the light of that of a purchaser of the property and affords it the same protection as it would extend to the latter:

> "There can be no difference in principle between the holder and owner of the notes given for the pur-

chase price and the purchaser of the property, as the reliance of the purchaser of the notes and of the property is upon the record. When that discloses an unimpeachable title, he receives the protection of the law as against unknown and latent defects.''

**Lester vs. Connelly, Sheriff, et al., 46 An., 340.**

In the instant case, therefore, since the act was on its face valid and there was no evidence of record that the right of redemption had been exercised within the delay fixed or extended, the bank should be protected from an attack on the title, unless the act purporting to be a sale with right of redemption was in fact merely a contract of mortgage or other security, and the bank had actual or constructive knowledge of such fact.

### III.

With regard to the act of sale with right of redemption of June 20th, 1900, Mrs. Augey, though stating that she desired thereby to·''save the property for Mrs. Barrett,'' refers to that transaction as a ''purchase'' on her part and terms the instrument between her and Barrett in 1906 as one wherein she ''sold the property back.'' Woulfe, the notary before whom the act of June 20th, 1900, was passed and who was the adviser of Catherine Augey at the time, testifies that he advised her to put the transaction in the shape of an act of sale with right of redemption, because she ''wanted to be in a position, if the money was not paid back, that there would be no trouble about her obtaining her money or the property.''

In the light of this testimony we are far from satisfied that though the transaction might have been ''expected to have in some sense, a pignorative or hypothecary effect,'' it was other than a transfer of ''ownership, de-

feasible only by redemption under the stipulations of the contract."

See, **Ward vs. Levy, 32 An., 787; Huck vs. Cosgrove, 39 An., 488; Caldwell vs. Trezevant, 111 La., 411.**

Pretermitting, however, the expression of a fixed opinion upon that subject and conceding that the act was intended between the parties to have the effect of a mortgage simply, we do not find that Mrs. Barrett has established that the bank had knowledge of the true character of the transaction.

The fact that the bank knew that Barrett was acquiring property that formerly belonged to his wife, was not a circumstance sufficient to put it upon enquiry. The only case relied upon as supporting a contrary view is that of **Layman vs. Vicknair, 47 An., 679,** where, because the title passed from the wife to a third person and from the latter to the husband on the same day, before the same notary and witnesses, and because of certain recitals in the deeds themselves, the Court concluded that a third person should have been put upon enquiry.

Moreover, in that case the controlling feature was that the transfer by the wife to the husband was to enable him to subject her property to the payment of his pre-existing and recorded mortgage debts. Here the husband acquired six years after the wife had sold the property and it is impossoble to hold that the bank should have suspected that the two sales, separated by an interval of six years, evidenced a connected scheme to burden the wife's property with the husband's debts, of the existence of which there was no record evidence.

See, **Seckinger vs. Cheneville, 125 La., 278,** and authorities cited.

There is no evidence that the bank had any actual knowledge of the value of the property in 1900, and more--

— 166 —

over it is not proved that its value then exceeded the price paid by Catherine Augey. The conveyance records showed that it had ben sold in 1884, for $1,500; that the next sale was in 1888, to Mrs. Barrett, who was then a Miss Lynch, for $1,500.; and that in 1900 Mrs; Barrett sold it for $2,000 to Mrs. Augey, who took title subject to an outstanding mortgage note then amounting with interest to about $1,300.00. Mrs. Barrett testifies that the property was worth $8,000.00 when she sold it in 1900; claiming that certain improvements had then been made; but Catherine Augey on the other hand, testifies positively that these improvements did not exist when she purchased the property. There is consequently no basis for holding that the price was vile or that in any event that the bank was charged with knowledge on this score.

The testimony is to the effect that the Barretts continued in possession of the property notwithstanding the sale to Catherine Augey in 1900. No direct proof of the bank being cognizant of this fact is to be found in the record, but the Court is asked to infer knowledge on its part from certain incidents in the record. In our judgment these incidents are wholly insufficient as the basis of an inference destructive of the effect to be given to the recital of the instrument of record upon which the bank had a right to rely, namely, that Mrs. Augey secured possession of the property coincidently with her purchase.

We are satisfied upon a review of the issues of law and of fact involved that Mrs. Barrett's attack on the bank's mortgage note is not well-founded and that the lower Court properly dismissed her proceeding.

Several cases are cited by her as justifying a contrary conclusion, but they are not pertinent to this controversy.

The cases of **Jolivet vs. Chaves, 125 La., 923,** and of **Layman vs. Vicknair, 47 An., 679,** have already been commented upon; while the cases of **Eames vs. Woodson, 120**

La., 1031; Rion vs. Reeves, 122 La., 650; Leger vs. Leger, 118 La., 322; Marbury vs. Colbert, 105 La., 467; LeBlanc vs. Bouchereau 16 An., 11; Collins vs. Perkins, 5 An. 99; and Baker vs. Smith, 44 An., 925, involve the effect, as between the parties alone, of authentic acts in the form of sales with right of redemption. In the case of **Miller vs. Shotwell, 38 An., 890,** the instrument on its face was a loan and clearly conveyed notice to third persons. In **Howe vs. Powell, 40 An., 307,** Gaff, who occupied the same position as that of the bank in this case, acknowledged in writing over his own signature that he knew that the instrument, which was recorded in the Mortgage Office, was intended as a mortgage and not as a sale with right of redemption. And finally the case of **Davis vs. Kendall, 50 An., 1121,** has no bearing on this controversy, whatever may be the doctrine it purports to announce.

We find, however, that the judgment requires amendment. The motion to dissolve and the merits were submitted and adjudged at one and the same time and there was consequently error in condemning plaintiff in injunction for fees of counsel, which are recoverable as damages only when the injunction is dissolved prior to trial on the merits, or perhaps for reasons independent of the merits.

It is accordingly ordered that the judgment appealed from be amended by striking therefrom the item awarding the sum of $250.00 damages for the illegal issuance of the writ of injunction and that as thus amended the judgment be affirmed at the cost of the appellee, defendant in injunction.

Modified and affirmed.

Dufour, J., takes no part.

Opinion and decree, March 10th, 1913.

Rehearing refused, April 7th, 1913.

Writ denied, May 13th, 1913.